**William H. ROGERS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 82A04–0807–CR–432.

Court of Appeals of Indiana.

March 17, 2009.

---

Karen M. Heard, Vanderburgh County Public Defender's Office, Evansville, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Henry A. Flores, Jr., Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

DARDEN, Judge.

### *STATEMENT OF THE CASE*

William H. Rogers appeals his conviction for theft as a class D felony.[1]

We affirm.

---

1. Ind.Code § 35–43–4–2.

---

### *ISSUES*

1. Whether there is sufficient evidence to support the conviction.

2. Whether the trial court abused its discretion in admitting evidence.

### *FACTS*

On September 18, 2007, Evansville Police Officer Wayne Hunt was working with the Drug Task Force. As it was a slow night, he "decided to watch the store[s], CVS and Walgreens, for people buying Sudafeds." (Tr. 25). He parked his unmarked vehicle so that he could "see people going in and out" of both stores. (Tr. 26).

At approximately 8:00 p.m., he observed Rogers "go into the [CVS] and then … just a little over a minute later," leave the store "real fast…." (Tr. 27). Around the same time, Kyle Muensterman, an employee of CVS, heard the alarm located at the store's exit. He observed a male dressed in a red shirt exiting the store.

As Rogers left CVS, Officer Hunt noticed that he "had something tucked underneath his arm like he was trying to hide it…." *Id.* He also observed that Rogers was wearing a red shirt.

Officer Hunt drove his vehicle to the CVS parking lot and briefly lost sight of Rogers but later observed him sitting in a vehicle. He then saw a woman leave a nearby restaurant and get into the vehicle with Rogers. Officer Hunt parked his vehicle to prevent Rogers from leaving. When Rogers exited his vehicle, Officer Hunt asked him "what's going on. Why are you running?" (Tr. 28). Rogers explained that he had just gotten into an argument with his girlfriend.

Officer Hunt then had Rogers return to his vehicle while he contacted an employee of CVS to "see if anything happened in the store." (Tr. 30). He learned that a "subject matching the description had been in the store and had taken some items." (Tr. 31). As he was speaking with the employee, he noticed that Rogers and his passenger had gotten out of the vehicle and switched seats, which struck Rogers as suspicious. He then observed Rogers reaching behind the seat.

Concerned that Rogers was trying to reach a weapon, Officer Hunt approached the driver's side of the vehicle and saw that Rogers "was trying to place a bottle of Jack Daniels underneath the passenger seat...." (Tr. 32). Officer Hunt removed Rogers and his passenger from the vehicle and searched the vehicle; he discovered some pills, another bottle of Jack Daniels and two bottles of perfume. The search of the vehicle did not reveal a receipt for the items or a bag from CVS. The woman in the vehicle admitted that the pills belonged to her.

Muensterman later identified the "[t]wo half gallons of Jack Daniels and two bottles of Flare perfume" as having coming from CVS. (Tr. 60). Namely, he identified security sensors that were specific to that CVS store on the bottles of whiskey. (Tr. 102–103). These sensors would cause the alarm located at the store's exit to sound. Thus, they would be removed only at the time of purchase by a CVS employee.

That same evening, Shance Sizemore, a CVS supervisor, reviewed the store's surveillance footage and copied it to a compact disc, which he gave to the Vanderburgh County Prosecutor's Office. Steve Dunmire, a criminal investigator with the Vanderburgh County Prosecutor's Office, then copied that disc to another, "cut[ting] out the parts where there was nothing relevant" and also created four photographs from the second disc. (Tr. 51).

On September 19, 2007, the State charged Rogers with class D felony theft, alleging that he "knowingly exert[ed] unauthorized control over the property of CVS, to-wit: assorted merchandise, with the intent to deprive the said CVS of any part of the use or value of the property and without the consent of the said CVS[.]" (App.16). On February 13, 2008, the State filed an information, alleging Rogers to be an habitual offender.

The trial court conducted a jury trial on June 17, 2008. Over Rogers' objection the trial court admitted into evidence the disc created by Sizemore; the disc created by the prosecutor's office; and the four photographs made from the second disc. Sizemore testified regarding the store's security surveillance system, explaining that the footage from sixteen cameras recorded to a hard drive; that it is set up to record when a camera senses motion; and that he could search for images taken during specific times or from specific cameras.

The jury found Rogers guilty as charged, and he admitted to being an habitual offender. The trial court held a sentencing hearing on July 2, 2008, after which it sentenced Rogers to two years on the theft charge which was enhanced by three years on the admission of being an habitual offender. The aggregate sentence was five years.

*DECISION*

1. *Sufficiency of the Evidence*

 Rogers asserts that the State failed to present sufficient evidence to support his conviction.

When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable infer-

ences *supporting* the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder *could* find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State,* 867 N.E.2d 144, 146–47 (Ind.2007) (quotations and citations omitted). Circumstantial evidence alone may support a theft conviction. *Hayworth v. State,* 798 N.E.2d 503, 507 (Ind.Ct.App. 2003).

Indiana Code section 35–43–4–2 provides that "[a] person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use," commits theft. Rogers contends that there is a lack of proof of ownership of the items found in his possession and that the State failed to establish that he exerted unauthorized control over CVS's property, where no CVS employee witnessed him take anything from the store; Officer Hunt did not see him carrying anything out of the store; Sizemore agreed that the whiskey could have been from "any CVS"; and the perfume lacked any identifying features.[2] (Tr. 84).

Here, Muensterman testified that at approximately 8:00 p.m., he heard the store's alarm sound, alerting him that someone had taken something from the store. At the same time, he observed a man in a red shirt "leaving quite quickly...." (Tr. 105). Also at this time, Officer Hunt heard CVS's alarm and observed Rogers exiting the store. Officer Hunt noticed that Rogers was wearing a red shirt and appeared to be hiding something. Within minutes, Officer Hunt located Rogers in the store's parking lot and discovered two bottles of whiskey and two bottles of perfume in Rogers' vehicle. The whiskey bottles both had CVS's "cap sensor[s] on them...." (Tr. 59). According to Sizemore, these sensors would trigger the alarm at the store's exit if someone tried to take the bottles out of the store without first purchasing them.

Sizemore also testified that the Flare perfume was a "new product," and therefore displayed near the store's entry and exit. During Sizemore's testimony, the trial court admitted four photographs into evidence. One of the photographs showed Rogers entering the store. The footage was time and date-stamped at 8:21:46 p.m. on September 18, 2007. Another photograph depicted Rogers standing at the "front rack which contained the Flare on the top shelf of it." (Tr. 76). Sizemore testified that the Flare could be seen in the photograph as "two little red boxes...." *Id.* This photograph was time-stamped at 8:21:53 p.m. According to Sizemore, the footage then skipped approximately a minute and a half. The next photograph, time-stamped at 8:23:00 p.m., depicts the display stand, but "[t]he two bottles of Flare have disappeared from the rack." (Tr. 80). The last photograph,

---

**2.** He also argues that the State failed to produce the items at trial. He, however, concedes that "Indiana law does not require the State to physically produce the alleged stolen property at trial[.]" Rogers' Br. at 13.

time-stamped at 8:23:02 p.m., shows Rogers exiting the store, "carrying a red square object out the door." (Tr. 81). Finally, Officer Hunt testified that Rogers had neither a receipt nor a bag for the items discovered in his vehicle.

We find that the circumstantial evidence was sufficient to infer that Rogers exerted unauthorized control over property belong to CVS.

### 2. Admission of Evidence

■ Rogers asserts that the trial court abused its discretion in admitting into evidence the disc created by Sizemore. We disagree.

We note that the admission or exclusion of evidence is within the sound discretion of the trial court, and we will reverse the trial court's determination only for an abuse of that discretion. An abuse of discretion occurs when a decision is clearly against the logic and effect of the facts and circumstances before the trial court. In reviewing the admissibility of evidence, we consider only the evidence in favor of the trial court's ruling and any unrefuted evidence in the appellant's favor. As a rule, errors in the admission or exclusion of evidence are to be disregarded as harmless unless they affect the substantial rights of a party. In determining whether an evidentiary ruling affected a party's substantial rights, we assess the probable impact of the evidence on the trier of fact.

*Redding v. State*, 844 N.E.2d 1067, 1069 (Ind.Ct.App.2006) (citations omitted), *reh'g denied.*

■ Rogers argues that the State failed to lay a proper foundation for the admission of the disc because Sizemore "admitted he left out portions of the hard drive for the relevant time period and that he never checked the CD against the hard

drive." Rogers' Br. at 18. Before photographic evidence may be admitted, an adequate foundation must be laid. *Bergner v. State*, 397 N.E.2d 1012, 1014 (Ind.Ct.App. 1979). "Our courts have consistently held this requires the testimony of a witness who can state the photograph is 'a true and accurate representation of the things it is intended to depict.'" *Id.*

■ Generally, photographs and videotapes are treated as demonstrative evidence. "As such, a photograph is not evidence in itself, but is used merely as a nonverbal method of expressing a witness' testimony and is admissible only when a witness can testify it is a true and accurate representation of a scene personally viewed by that witness." *Id.* at 1015. Where, however, the photographic evidence must speak for itself, such as in this case, it may be admitted under the "silent witness" theory. *Id.*

■ In order for substantive photographic evidence to be admitted under the "silent witness" theory, "there must be a strong showing of authenticity and competency...." *Edwards v. State*, 762 N.E.2d 128, 136 (Ind.Ct.App.2002) (discussing the admission of videotape), *trans. denied.*

For example, in cases involving photographs taken by automatic cameras, there should be evidence as to how and when the camera was loaded, how frequently the camera was activated, when the photographs were taken, and the processing and chain of custody of the film after its removal from the camera.

*Id.* The showing of authenticity also must include proof that the photograph has not been altered in any way. *Id.* A duplicate, however, "is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be

unfair to admit the duplicate in lieu of the original." Ind. Evid. Rule 1003.

Sizemore testified that the CVS store utilized sixteen cameras throughout the store, with one of those cameras focused on the display area where the Flare perfume was located. According to Sizemore, the footage captured by the cameras was recorded to a digital video recorder's hard drive. He was able to view the images on the hard drive after "pick[ing] the time frame" and various camera angles. (Tr. 68). He further testified that he personally copied "[t]he footage that [he] found on the surveillance from that day" on the security system's hard drive to a disc. (Tr. 65). He testified that he had viewed the disc he made and agreed that it was a "fair and accurate portrayal of what [he] viewed on the hard drive." (Tr. 71). He further testified that he had viewed the disc created by the prosecutor's office and agreed that it was a "fair and accurate portrayal" of the disc he had created. (Tr. 72). However, it did not "contain the extra cameras that had no ... relevant video footage." *Id.* He also agreed that the four photographs made from the second disc and entered into evidence fairly and accurately depicted the scenes contained on the store's hard drive.

Here, the discs and photographs introduced into evidence were merely duplicates of the original recording. *See* Evid. R. 1001(4) ("A 'duplicate' is a counterpart produced by the same impression as the original ... or by means of photography, ... or by mechanical or electronic rerecordings, ... or video tape or by other equivalent techniques which accurately reproduces the original."). Although the discs and photographs were redacted versions of the original, there is no evidence that they were altered or changed. *See Bergner,* 397 N.E.2d at 1017 (finding it "necessary to avoid the dangers of misrepresentation or manufactured evidence which are possible through composite or retouched photographs"). In fact, Sizemore testified that the discs and photographs derived from the discs accurately reflected the original recording. Finally, Sizemore testified extensively regarding CVS's security system and the procedure he used to view, copy, and edit the footage.

We find that the discs and photographs admitted into evidence conformed to the requirements under the "silent witness" theory. We therefore find no abuse of discretion in admitting the evidence.

Even if we were to find that the trial court erred in admitting evidence, we would find such error harmless. "Errors in the admission or exclusion of evidence are to be disregarded as harmless error unless they affect the substantial rights of the party." *Corbett v. State,* 764 N.E.2d 622, 628 (Ind.2002). We "assess the probable impact of that evidence upon the jury" in determining whether the admission of evidence affected the party's substantial rights. *Id.*

In this case, Rogers triggered the store's alarm as he exited the CVS store. He appeared to be hiding something as he left the store. Shortly thereafter, Officer Hunt discovered two bottles of whiskey and two bottles of perfume in Rogers' possession. CVS employees identified the security sensors on the whiskey bottles as those used by CVS. Given the evidence, we cannot say that the probable impact of the admission of the discs and photographs affected Rogers' substantial rights, particularly as to the theft of the whiskey. Therefore, any error in admitting the evidence must be disregarded as harmless.

Affirmed.

RILEY, J., and VAIDIK, J., concur.