### STATE of Missouri, Respondent,

v.

### Shannon K. MOYLE, Appellant.

### WD 79976

Missouri Court of Appeals, Western District.

Opinion filed: October 31, 2017

Karen L. Kramer, for Respondent.

Katharine P. Curry, for Appellant.

Before Division Four: Mark D. Pfeiffer, Chief Judge, Gary D. Witt, Judge and Edward R. Ardini, Jr., Judge

## EDWARD R. ARDINI, JR., JUDGE

Shannon K. Moyle (Moyle) appeals her conviction for one count of the class D felony of stealing by deceit. She argues that the trial court abused its discretion by admitting a security surveillance video without a proper foundation. Finding no error, we affirm.

### Factual and Procedural Background[1]

On December 27, 2013, Brittany Stotts (Stotts) was working the customer service desk at a Walmart when she was approached by two women. Stotts recognized one of the women as Ronnisa Lee (Lee), who she had gone to school with, and the other as Moyle. The two women indicated they wished to return a case of beer and a hair trimmer. This aroused Stotts's suspi-cion, as she noted that the women had come from the merchandise section of the store and not the front entrance, the direction from which most customers with returns approached. She also noted that the beer felt cold or "fresh." Lee handed Stotts two receipts and she proceeded to process the return. Moyle wandered away from the counter briefly during the return process but returned by the time Stotts refunded $27.79 in cash to Lee. The last step of the return process required the customer to sign a receipt. Stotts observed Lee sign the receipt with a false name, "Ashley Smith."

After the return was completed and the two women had left, Stotts set the returned items aside and contacted the assistant manager, Lori Flax (Flax). Flax reviewed the store's video surveillance system which showed Lee and Moyle enter the store and proceed to the alcohol and soda aisle where Moyle took a case of beer and placed it in a cart being pushed by Lee. The two women then went to the store's health and beauty section where Moyle placed a hair trimmer in the cart. Finally, the two women could be seen approaching the customer service desk where they presented the items in their cart for a refund. After reviewing the surveillance video, Flax contacted the police.

Moyle was arrested and charged with one count of stealing by deceit. The surveillance video from the store was admitted at trial, over defense counsel's objection, and played for the jury. The jurors also requested and received the video during its deliberations before returning its verdict finding Moyle guilty of the offense. The trial court, having found Moyle to be a prior and persistent offender, sentenced

---

1. We view the evidence in a light most favorable to the verdict. *State v. Baumruk,* 280 S.W.3d 600, 607 (Mo. banc 2009).

her to seven years in the Department of Corrections. Moyle now appeals.

## Discussion

Moyle's sole point on appeal argues that the trial court erred in overruling her objection to the admission of the surveillance video. She asserts that the State failed to lay a proper foundation authenticating the video. The question of whether a sufficient foundation has been established to support the admission of evidence is subject to the trial court's broad discretion. *State v. Hosier*, 454 S.W.3d 883, 899 (Mo. banc 2015). We review the trial court's decision only for an abuse of that discretion. *Id.* "A trial court abuses its discretion when its ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *State v. Lemasters*, 456 S.W.3d 416, 420 (Mo. banc 2015) (quoting *State v. Taylor*, 134 S.W.3d 21, 26 (Mo. banc 2004)). We view the evidence presented at trial in a light most favorable to the verdict. *State v. Baumruk*, 280 S.W.3d 600, 607 (Mo. banc 2009).

"The party offering a videotape in evidence must show that it is an accurate and faithful representation of what it purports to show." *State v. Minner*, 256 S.W.3d 92, 97 (Mo. banc 2008) (quoting *Phiropoulos v. Bi–State Development Agency*, 908 S.W.2d 712, 714 (Mo. App. E.D. 1995)). Our courts have previously held that the foundation for the admission of a videotape "may be established through the testimony of any witness who is familiar with the subject matter of the tape and competent to testify from personal observation." *Id.* For example, the foundation

for the admission of a video depicting an assault, taken from a store's surveillance system, may be laid by the victim of the assault testifying that the video is "a fair and accurate recording" of the relevant event. *State v. McNear*, 343 S.W.3d 703, 704 (Mo. App. S.D. 2011). This is true even if the witness is unfamiliar with how the store's surveillance system works. *Id.* However, in this case, there was no individual available who witnessed Moyle place the beer and hair trimmer in the cart. Thus, the State was not able to call a witness to establish, based on personal observation, that the store's surveillance video was "a fair and accurate recording" of the depicted event under the traditional standard.[2] Instead, the State argues that the video was admissible under what is commonly known as the "silent witness" theory of authentication.

Under the "silent witness" theory, the video or photograph being offered as evidence is considered "a silent witness which speaks for itself, and is substantive evidence of what it portrays independent of a sponsoring witness." Tracy Bateman Farrell, *Construction and Application of Silent Witness Theory*, 116 A.L.R. 5th 373, 383 (2004); *see also* 3 Wigmore, *Evidence* § 790 at 220 (Chadbourn rev. 1970) ("[E]ven though no human is capable of swearing that he personally perceived what a photograph purports to portray ... there may nevertheless be good warrant for receiving the photograph in evidence. Given an adequate foundation assuring the accuracy of the process producing it, the photograph should then be received as a so-called silent witness or as a witness who 'speaks for itself.' "); 2 McCormick, *On evidence* § 216, at 39-40 (Bourn ed., 7th ed. 2013) ("Recordings such as a tape from

---

**2.** Stotts reviewed the surveillance video and testified that it fairly and accurately reflected the transaction that occurred at her customer service desk. Therefore, that portion of the video was admissible under traditional principles of authentication.

an automatic surveillance camera can be authenticated as the accurate product of an automated process.... Courts acknowledge that theses videotapes are independent sources of substantive evidence; indeed they seem to treat these tapes as unimpeachable eyewitnesses 'testifying' to the true version of what happened."). The foundation for admitting a video under the "silent witness" theory is drawn, "not from any witness who actually viewed the scene portrayed on film, but from other evidence which supports the reliability of the photographic product." Farrell, *supra*, at 383. In this regard the evidence necessary to lay the foundation "closely resemble[s] that required for the admission of the products of other scientific processes." *Id.*; 23 C.J.S.

*Criminal Law* § 1042 ("[T]he foundation requirements for the admission of photographs as substantive evidence require a strong showing of the photographs' competency and authenticity, and they should not be admitted unless the trial court is convinced of their competency and authenticity to a relative certainty.").

█ This Court is not aware of any Missouri case addressing the "silent witness" theory. However, we note that this method of authentication has been adopted by a large number of other jurisdictions.[3] We have reviewed the decisions of these courts, and we find their logic to be persuasive.[4] We therefore hold that where a reasonable foundation indicating the accu-

3. *See Ex parte Rieber*, 663 So.2d 999, 1008-11 (Ala. 1995); *State v. Haight-Gyuro*, 218 Ariz. 356, 186 P.3d 33, 35 (Ariz. Ct. App. 2008); *Fisher v. State*, 7 Ark. App. 1, 643 S.W.2d 571, 574-75 (1982); *People v. Bowley*, 59 Cal.2d 855, 31 Cal.Rptr. 471, 382 P.2d 591, 594-96 (1963); *Hannewacker v. City of Jacksonville Beach*, 419 So.2d 308, 310-11 (Fla. 1982); *Phagan v. State*, 268 Ga. 272, 486 S.E.2d 876, 884 (1997); *People v. Taylor*, 353 Ill.Dec. 569, 956 N.E.2d 431, 438-41 (2011); *Torres v. State*, 442 N.E.2d 1021, 1024-25 (Ind. 1982); *State v. Holderness*, 293 N.W.2d 226, 230-34 (Iowa 1980); *State v. Pham*, 281 Kan. 1227, 136 P.3d 919, 933-34 (2006); *Litton v. Com.*, 597 S.W.2d 616, 619 (Ky. 1980); *State v. Young*, 303 A.2d 113, 116 (Me. 1973); *Sisk v. State*, 236 Md. 589, 204 A.2d 684, 685-88 (1964); *Com. v. Figueroa*, 56 Mass.App.Ct. 641, 779 N.E.2d 669, 673-74 (2002); *Matter of Welfare of S.A.M.*, 570 N.W.2d 162, 164-66 (Minn. Ct. App. 1997); *State v. Anglemyer*, 269 Neb. 237, 691 N.W.2d 153, 160-63 (2005); *State v. Bunting*, 187 N.J.Super. 506, 455 A.2d 531, 532-33 (N.J. Super. Ct. App. Div. 1983); *State v. Stangle*, 166 N.H. 407, 97 A.3d 634, 636-40 (2014); *State v. Henderson*, 100 N.M. 260, 669 P.2d 736, 737-38 (N.M. Ct. App. 1983); *People v. Byrnes*, 33 N.Y.2d 343, 352 N.Y.S.2d 913, 308 N.E.2d 435, 437-38 (1974); *State v. Hunt*, 297 N.C. 447, 255 S.E.2d 182, 185 (1979); *Midland Steel Prods. Co. v. U.A.W. Local 486*, 61 Ohio St.3d 121, 573 N.E.2d 98, 105 (1991); *State v. Pulphus*, 465 A.2d 153, 157-62 (R.I. 1983); *Reavis v. State*, 84 S.W.3d

716, 719–20 (Tex. Ct. App. 2002); *State v. Hygh*, 711 P.2d 264, 270 (Utah 1985); *State v. Goyet*, 120 Vt. 12, 132 A.2d 623, 631 (1957); *Ferguson v. Com.*, 212 Va. 745, 187 S.E.2d 189, 190–91 (1972); *U.S. v. Rembert*, 863 F.2d 1023, 1026-28 (D.C. Cir. Ct. 1988); *U.S. v. Bynum*, 567 F.2d 1167, 1171 (1st Cir. 1978); *U.S. v. Marshall*, 332 F.3d 254, 263 n. 5 (4th Cir. 2003); *U.S. v. Taylor*, 530 F.2d 639, 641–42 (5th Cir. 1976); *U.S. v. Sivils*, 960 F.2d 587, 597 (6th Cir. 1992); *U.S. v. Grey*, 531 F.2d 933, 935 (8th Cir. 1976).

4. Among these discussions of the "silent witness" theory, we find the following observations of the Supreme Court of California in *People v. Bowley* particularly compelling:

There is no reason why a photograph or film, like an X-ray, may not, in a proper case, be probative in itself. To hold otherwise would illogically limit the use of a device whose memory is without question more accurate and reliable than that of a human witness. It would exclude from evidence the chance picture of a crowd which on close examination shows the commission of a crime that was not seen by the photographer at the time. It would exclude from evidence pictures taken with a telescopic lens. It would exclude from evidence pictures taken by a camera set to go off when a building's door is opened at night. *People v. Bowley*, 59 Cal.2d 855, 31 Cal.Rptr. 471, 382 P.2d 591, 595 (1963).

racy of the process producing a video or photograph is established, the video or photograph may be received as evidence having inherent probative value and such credibility and weight as the trier of fact deems appropriate. *See, e.g., Litton v. Com.*, 597 S.W.2d 616, 619 (Ky. 1980).

■■■ In determining whether a proponent of this type of video or photographic evidence has satisfied this foundational standard, a trial court should consider: 1) whether the camera, recording system and storage method were working properly at the time of the events depicted; 2) the historic reliability of the camera, recording system and storage method used and whether they are sufficiently protected from tampering by third parties; and 3) whether the recording in the medium presented at trial is a fair and accurate portrayal of the recording in its original form and has not been altered, tampered with or modified (or that any alteration or modification is sufficiently explained and does not affect the reliability or accuracy of the evidence).[5] We now turn to the facts in the present case to determine if the State succeeded in laying a sufficient foundation.

■■■ At trial, the State called Assistant Manager Flax to testify about the store's video surveillance system. Flax testified that there were numerous cameras located throughout the store and the system was constantly recording. She explained that the recordings were stored digitally on-site in a locked office accessible only to salaried members of management and the store's loss-prevention department. Once in the office, the stored recordings could only be viewed on a computer that required the individual to sign in and was passcode protected. Flax testified that she reviewed surveillance video frequently as part of her job and had never known the system to record something that had not happened. She also specifically described the process she employed when investigating the Moyle incident, which included reviewing the surveillance video recordings and downloading the relevant portions to a DVD that was then provided to police. Finally, Flax testified that she had reviewed the DVD and confirmed that it contained a fair and accurate representation of the original surveillance recordings. Based on this testimony, we conclude that the trial court did not abuse its discretion in finding that a proper foundation was established for the admission of the store's security surveillance video.[6] Moyle's point is denied.

5. This is not intended to be an exhaustive list of factors for the trial court to consider and, based on the specific recording system used and other circumstances that might be present in a particular case touching upon the indicia of reliability of the recording or storage system, additional inquiry might be necessary.

6. Several other jurisdictions have dealt with cases concerning facts nearly identical to those presented by this case. For example, in *State v. Stangle*, the defendant was charged with theft by deceit for attempting to fraudulently "return" a vacuum cleaner. *State v. Stangle*, 166 N.H. 407, 97 A.3d 634, 635 (2014). The State sought to introduce portions of a store's surveillance video that depicted the defendant placing the vacuum in his shopping cart before proceeding to the customer service area. *Id.* at 635-36. The State relied on the testimony of the store's asset protection manager to authenticate the video. *Id.* at 639. "The manager testified at length about the location and number of cameras in the store, their maintenance and operation, and the storage systems for video files." *Id.* She also testified as to her process of reviewing those videos, copying the files to a CD, and providing that CD to the police. *Id.* Finally, she confirmed that the video played for the court was the same video that she had given to the police. *Id.* The court found this testimony to be sufficient to authenticate the video under the "silent witness" theory. *Id.* at 639-40. In the case of *Rogers v. State*, the State of

## Conclusion

The judgment of the trial court is affirmed.

All concur.

Indiana charged the defendant with the theft of property from a CVS drugstore. *State v. Rogers*, 902 N.E.2d 871, 874 (Ind. Ct. App. 2009). The State sought to introduce video segments taken from the store's automated surveillance system under the "silent witness" theory. *Id.* at 877. For the purpose of authenticating the video, the State called a supervisor from the store who testified extensively regarding the placement of the store's securi-

ty cameras as well as the procedures he used to view, copy, and edit the footage. *Id.* The store supervisor testified that he had viewed the footage recorded on the disc provided to the police and confirmed that it was a fair and accurate portrayal of what he had seen recorded on the security system's hard drive. *Id.* The court found that the supervisor's testimony was sufficient to admit the evidence under the "silent witness" theory. *Id.*