## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 19 2017, 9:17 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Philip R. Skodinski
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Robert J. Szabo, Jr.,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

December 19, 2017

Court of Appeals Case No.
71A03-1706-CR-1411

Appeal from the St. Joseph
Superior Court

The Honorable Jeffrey L. Sanford,
Judge

Trial Court Cause No.
71D03-1606-F5-102

**Mathias, Judge.**

[1] Robert J. Szabo Jr. ("Szabo") appeals his conviction for Level 5 felony burglary. Szabo raises four issues on appeal which we restate as:

I. Whether the trial court abused its discretion when it admitted photographic evidence of surveillance camera footage;

II. Whether the evidence was sufficient to support Szabo's burglary conviction;

III. Whether the trial court abused its discretion when it denied Szabo's tendered jury instruction on criminal trespass; and

IV. Whether an officer's statement at trial constituted an improper comment on Szabo's right to remain silent.

We affirm.

## Facts and Procedural History

St. Joseph County Police Officer Joshua Harmon ("Harmon") was driving in his squad car with a training officer around 1:45 a.m. on June 2, 2016, when he heard a loud alarm coming from the direction of Headers car care business ("Headers") located in Mishawaka, Indiana. Officer Harmon pulled into Headers and noticed a gap in the fence surrounding its property. Soon after, Mishawaka Police Officer Joel Cyrier ("Officer Cyrier") arrived on scene. Officer Harmon, his training officer, and Officer Cyrier entered Headers's lot through the opening in the gate where they saw a slightly ajar service door next to a garage. The officers waited outside the garage for a K-9 unit that was en route and would be used to clear the building.

While waiting for the K-9 unit, Officers Harmon and Cyrier saw Szabo walking on the outside of the fence enclosing Headers's property. The officers approached Szabo, handcuffed him, put him in the back seat of a patrol vehicle, and read him his *Miranda* rights. Szabo told the officers that he had left the south side of South Bend around 1:45 a.m. and was just walking along the road.

Officer Cyrier told Szabo there was no way he could have walked that far in such a short amount of time. Szabo also appeared sweaty and out of breath, which the officers found unusual because it was a relatively cool night.

[5] While Szabo was in custody, Headers's general manager Steve Huddleston ("Huddleston") arrived and provided the officers with access to the computer surveillance system on the property. Headers is equipped with twelve closed-circuit cameras that are always operating. Copies of the video could not be made, so instead, Mishawaka Police Officer Robert Pfieffer ("Officer Pfieffer") took photographs and a video recording of the surveillance video as it appeared on Huddleston's computer. Several photographs and the recording appeared to show Szabo inside one of Headers's garages looking at parts and tools.

[6] At this point, Szabo was placed under arrest and was advised that if he wanted to speak to a detective about his whereabouts and actions that evening, then he could do so at the Mishawaka Police Station. The next day, Szabo was charged with Level 5 felony burglary.

[7] A two-day jury trial commenced on April 20, 2017. Several photographs of the surveillance footage at Headers were admitted over objection. Also, prior to final arguments the court declined to give the jury Szabo's tendered instruction on criminal trespass. The jury found Szabo guilty, and he was sentenced on May 31 to six years in the Department of Correction. Szabo now appeals.

# I. Admission of Surveillance Footage Photographs

[8] Szabo first argues that the State failed to offer the proper foundation necessary to admit the photographs of the surveillance video of Headers. Photographs depicting matters that a witness describes during testimony are generally admissible. *Ewing v. State*, 719 N.E.2d 1221, 1225 (Ind. 1999). Like other evidence, photograph evidence falls within the sound discretion of the trial court and we will only reverse for an abuse. *McQueen v. State*, 711 N.E.2d 503, 505 (Ind. 1999). A trial court abuses its discretion by ruling in a way clearly against the logic and effect of the facts and circumstances before it. *Halliburton v. State,* 1 N.E.3d 670, 675 (Ind. 2013).

[9] The foundation necessary for admitting a photograph at trial depends on how it will be used. *Knapp v. State*, 9 N.E.3d 1274, 1282 (Ind. 2014). Often times, photographs are introduced to aid in the presentation and testimony at trial, in which case the only requirement is testimony that the photograph accurately depicts the scene or occurrence as it appeared at the time in question. *Id.* (citations and quotations omitted).

[10] Other times—as is this case here—photographs are admitted as substantive evidence as "silent witnesses" as to the activity being depicted. *Id.* In this situation, the foundational requirements are much stricter. *Id.* When a photograph is introduced at trial for "silent witness" purposes, the witness authenticating the photograph(s) "must give identifying testimony of the scene that appears in the photograph[s]," sufficient to persuade "the trial court . . . of

their competency and authenticity to a *relative certainty*." *Id.* (emphasis in original) (citations omitted).

[11] Here, the photographs were used for substantive purposes, as "silent witnesses" showing Szabo inside Headers at the time the alarm went off. Huddleston testified at trial that Headers's surveillance system consists of twelve closed-circuit cameras that are always running. When Huddleston arrived at Headers on June 2, he accessed and viewed footage from the surveillance cameras with the officers. Huddleston played the video beginning just after the alarm went off, and it was from this footage that the police officers captured several images. Additionally, Huddleston testified that the pictures represented true and accurate visuals of the security footage, and that the pictures accurately depicted the rear service bay garage located on Headers's property. *See Rogers v. State*, 902 N.E.2d 871, 877 (Ind. Ct. App. 2009).

[12] Later during trial, Officer Pfieffer indicated that he took the pictures of the surveillance video, and at no point did he touch up or alter the photographs in any way. *Id.* at 876 (finding that to show authenticity under the silent witness theory the photographs must not have been altered). Officer Pfeiffer also explained that he needed to take pictures of the surveillance images because no one on site at the time knew how to make a copy of the actual camera footage.

[13] Szabo takes issue with the fact that the date on the videotape was June 3, when the video was purportedly from June 2, and that there was no explanation given as to why one of the pictures showed Szabo's coat in color. However, three

officers and Huddleston testified that they viewed the footage on June 2, and that the pictures of the footage were taken that same night. Huddleston also explained that when the lights are off, the cameras will record in black and white due to night vision; however, when the lights are on, the cameras will record in color. The one image appeared in color because there was a fluorescent light on above the vehicle in the garage at the time the footage was captured.

[14]     Based on these facts and circumstances, we conclude that the testimony from Officers Harmon, Cyrier, and Pfieffer, along with the testimony of Huddleston established a sufficient foundation upon which the trial court could admit photographs of Headers's surveillance footage under the "silent witness" theory. *See Wise v. State*, 26 N.E.3d 137, 142–43 (Ind. Ct. App. 2015), *trans. denied*. Accordingly, the trial court did not abuse its discretion when it admitted the photographs during trial.

## II.   Sufficiency of the Evidence

[15]     Szabo next contends that the State failed to present sufficient evidence to support his burglary conviction. When reviewing a claim of insufficient evidence to sustain a conviction, we consider only the probative evidence and reasonable inferences supporting the verdict. *Jackson v. State*, 50 N.E.3d 767, 770 (Ind. 2016). It is the fact-finder's role, not ours, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. *Id*. We will affirm the conviction unless no reasonable fact-finder could have found the elements of the crime proven beyond a reasonable doubt.

*Id.* It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence; rather, the evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Drane v. State*, 867 N.E.2d 144, 146–47 (Ind. 2007).

[16] To convict Szabo of Level 5 felony burglary, the State needed to prove that he: (1) broke and entered into the building or structure of another; (2) with the intent to commit a felony or theft inside. Ind. Code § 35-43-2-1. Szabo's primary argument is that he cannot be guilty of burglary because the State presented no evidence that he intended to commit a felony or theft inside of Headers. We disagree.

[17] As our supreme court has explained, "Burglars rarely announce their intentions at the moment of entry," and therefore, "a burglar's intent to commit a specific felony at the time of the breaking and entering may be inferred from the circumstances." *Baker v. State*, 968 N.E.2d 227, 229–30 (Ind. 2012) (citations and quotations omitted). "Circumstantial evidence alone is sufficient to sustain a burglary conviction." *Id.* at 230. We find two cases instructive in analyzing Szabo's claim.

[18] In *Sipes v. State*, our supreme court found sufficient evidence that Sipes intended to commit theft when he was found standing near a table with money on it and then fled when the homeowner screamed. 505 N.E.2d 796, 797 (Ind. 1987). The *Sipes* court explained, "The fact that it was late at night and that [Sipes] was in a

home where he had not been invited was evidence from which a jury could infer that he was guilty of breaking into the home with intent to steal." *Id.*

[19] In *Wormbly v. State*, a panel of this court found sufficient evidence to support Wormbly's intent to commit theft. 550 N.E.2d 95, 97 (Ind. Ct. App. 1990), *trans. denied*. In that case, Wormbly had broken into the attic of a bar and cut a hole in the ceiling leading down to where cash and merchandise were kept. *Id.* Our court reasoned, "It can be inferred that Wormbly . . . [was] approaching valuable property for the purpose of taking it when the police interrupted [his] approach." *Id.*

[20] Here, Szabo's conduct was similar to that of the defendants in both *Sipes* and *Wormbly*. The evidence established that Szabo was inside one of the garages on Headers property around 1:30 in the morning, and he clearly can be seen bending down and looking at various tools and parts just before the alarm sounded. *See Baker*, 968 N.E.2d at 231 (holding that the defendants act of looking through kitchen cupboards and drawers was sufficient for a jury to conclude the defendant entered with the intent to commit theft). Szabo's actions are unlike the defendant in *Freshwater v. State* where our supreme court found insufficient evidence to show the requisite intent to commit a felony because there was no evidence that the defendant "was near or approaching anything valuable." 853 N.E.2d 941, 944–45 (Ind. 2006).

[21] Without any evidence to the contrary, it is reasonable for a jury to infer that an individual intends to commit theft when he breaks into a closed business

establishment after hours. *Oster v. State*, 992 N.E.2d 871, 876–77 (Ind. Ct. App. 2013), *trans. denied*. It is not our role on appeal to substitute our judgment for that of the fact-finder, or to reweigh the evidence. And we examine the evidence most favorable to the jury's judgment, and we will not disturb its verdict if there is substantial evidence of probative value from which the jury might reasonably infer guilt. *Wormbly*, 550 N.E.2d at 97. We are satisfied that the State produced sufficient evidence of probative value here to support Szabo's burglary conviction.

### III.    Criminal Trespass Jury Instruction

[22]    Szabo next argues that the trial court abused its discretion when it declined to give the jury his tendered instruction on criminal trespass. Trial courts are provided broad discretion when instructing juries. *Erlewein v. State*, 775 N.E.2d 712, 714 (Ind. Ct. App. 2002), *trans. denied*. When determining whether to give a lesser included offense instruction, trial courts apply the three-part test set out in *Wright v. State*, 658 N.E.2d 563 (Ind. 1995), which was explained more recently by our supreme court in *Wilson v. State*:

> The first two parts require the trial court to determine whether the offense is either inherently or factually included in the charged offense.  If so, the trial court must determine whether there is a serious evidentiary dispute regarding any element that distinguishes the two offenses. . . . Where a trial court makes such a finding, its rejection of a tendered instruction is reviewed for an abuse of discretion.

765 N.E.2d 1265, 1271 (Ind. 2002) (citations, quotation, and footnote omitted). If the evidence in the record does not support giving an instruction on an inherently or factually included lesser offense, then the trial court should not give it to the jury. *Wright*, 658 N.E.2d at 567.

[23] Szabo tendered the following instruction on criminal trespass as a lesser included offense of burglary, which the trial court refused to give:

> Included in the crime of "Burglary", as charged in the Information, is the offense of Criminal Trespass.
>
> "Criminal Trespass" is defined by statute as follows:
>
> "A person who:
>
> (1) not having a contractual interest in the property, knowingly or intentionally enters the real property of another person after having been denied entry by the other person or that person's agent; or
>
> (2) knowingly or intentionally interferes with the possession or use of the property of another person without the person's consent; commits criminal trespass, a Class A misdemeanor.
>
> To convict the defendant, the State must have proved each of the following elements:
>
> 1. The defendant, Robert Szabo;
>
> 2. Knowingly or intentionally;

3. Entered the property of Headers Car Care after having been denied entry and while not having a contractual interest in that property; or

[4]. Interfered with the possession or use of the property of Headers Car Care;

[5]. Without the consent of Headers Car Care.

The crime of criminal trespass is distinguished from the crime of burglary by the fact that burglary requires proof that Robert Szabo broke and entered the property of Headers Car Care and that he did so with the intent to commit a felony theft therein.

If you find the State failed to prove each of the essential elements of burglary you may find the defendant guilty of criminal trespass. To convict the defendant of any crime, however, you must find the State has proven each of the elements of that particular crime beyond a reasonable doubt.

Appellant's App. p. 12. Szabo argues that the trial court's refusal was error. We disagree.

[24] First, our supreme court has consistently held that criminal trespass is not an inherently lesser included offense of burglary. *E.g.*, *J.M. v. State*, 727 N.E.2d 703, 705 (Ind. 2000). Next, to determine whether criminal trespass is a factually included lesser offense, we look to the charging information and determine whether all of the elements of the lesser offense are included. *Watts v. State*, 885 N.E.2d 1228, 1231 (Ind. 2008).

[25] A charge of criminal trespass in the present case could have come in two ways. First, it would have required that: (1) Szabo knowingly or intentionally entered the real property of Headers; (2) after having been denied entry; and (3) not having a contractual interest in the property. Ind. Code § 35-43-2-2(b)(1) (2014).[1] Or second, that Szabo knowingly or intentionally interfered with the possession or use of Headers without consent. I.C. § 35-43-2-2(b)(4).

[26] Here, the charging information stated, "On or about June 2, 2016 in St. Joseph County, State of Indiana, ROBERT J SZABO Jr. did knowingly break and enter the building or structure of Headers Car Care; with the intent to commit a theft therein." Appellant's App. p. 9. The language the State chose to use tracks the requisite language for Level 5 felony burglary. *See* I.C. § 35-43-2-1. The charging information does not address whether Szabo had been denied entry, whether he had a contractual interest in the property, or whether he interfered with the possession or use of Headers without consent. By only charging elements that would constitute burglary, the State excluded the elements of criminal trespass in the information, and as such an instruction on criminal trespass here would be improper. *Wormbly*, 550 N.E.2d at 96; *see also Jones v. State*, 438 N.E.2d 972, 975 (Ind. 1982) (explaining that "the state through its drafting can foreclose as to the defendant, the tactical opportunity to seek a conviction for a lesser offense.").

---

[1] The Criminal Trespass statute was amended on July 1, 2016. Here, we cite to the statute as it existed at the time of the current offense in June 2016.

Therefore, because the offense of criminal trespass is not inherently or factually included in the burglary charge, the trial court did not abuse its discretion when it refused to give Szabo's tendered instruction.

## IV. Impermissible Comment on Szabo's Right to Remain Silent

Szabo next claims that the trial court erred when it denied his motion for a mistrial based on an alleged *Doyle* violation. In general, a criminal defendant may not be penalized at trial for invoking the right to remain silent. *Morgan v. State,* 755 N.E.2d 1070, 1074 (Ind. 2001) (citing *Doyle v. Ohio,* 426 U.S. 610, 620 (1976)). In *Doyle,* the Court held that using a defendant's post-*Miranda* silence to impeach a defendant at trial violates the Due Process Clause of the Fourteenth Amendment. *See* 426 U.S. at 619. "The point of the *Doyle* holding is that it is fundamentally unfair to promise an arrested person that his silence will not be used against him and thereafter to breach that promise by using the silence to impeach his trial testimony." *Lynch v. State*, 632 N.E.2d 341, 342 (Ind. 1994) (citation omitted).

A mistrial is an extreme remedy warranted only when no other curative measure will rectify the situation. *Evans v. State,* 855 N.E.2d 378, 385 (Ind. Ct. App. 2006), *trans. denied.* Because the trial court is in the best position to gauge the circumstances surrounding an event and their impact on the jury, we review its decision to deny a mistrial for an abuse of discretion. And a *Doyle* violation may be harmless if it is clear beyond a reasonable doubt that the error did not contribute to a defendant's conviction. *Sobolewski v. State*, 889 N.E.2d 849, 857 (Ind. Ct. App. 2008), *trans. denied.*

[30] At trial, the following exchange took place between the prosecutor and Officer Cyrier:

> [Prosecutor]: Without going to what was actually seen in the video, what did you do next as a consequence?
>
> [Officer Cyrier]: After the video was seen, I went back and I spoke to our suspect who at that point we believed that he had entered the building. We had told him he was under arrest, explained to him that if he wanted to talk to a detective that he could be transported to the Mishawaka Police Station and talk to a detective to explain his whereabouts and his actions of that night.

Tr. pp. 58–59. Szabo's counsel immediately objected and stated to the court, "Whether he exercised his rights not to speak to them or not cannot be commented upon or asked in any manner. I move for a mistrial." *Id.* at 59. The trial court denied the motion for a mistrial, but it admonished the jury to ignore Officer Cyrier's statement. Szabo now claims that the mistrial should have been granted because "[b]y making these comments before the jury, Officer Cyrier created an expectation on the part of the jury that [Szabo] would offer an explanation to a detective, and that by not doing so, created an implication of guilt." Appellant's Br. at 12.

[31] We initially note that Officer Cyrier was not commenting on Szabo's silence, or whether or not Szabo responded at all—he was merely explaining the actions he took after he watched the surveillance footage. And our supreme court has

explained that "comments about interviews between police and a suspect are hardly forbidden territory." *Trice v. State*, 766 N.E.2d 1180, 1183 (Ind. 2002).

[32]     Additionally, the prosecutor did not specifically elicit this testimony, but rather Officer Cyrier was responding to an innocuous question about his actions after viewing the surveillance footage. This is not a situation where the prosecutor provoked testimony about a defendant's post-*Miranda* silence. *See Miller v. State*, 702 N.E.2d 1053, 1073 (Ind. 1998). Finally, the trial court admonished the jury to ignore the testimony, and the prosecutor never brought this testimony up again at any point during trial. *See Greer v. Miller,* 483 U.S. 756, 764–65, (1987) (finding no *Doyle* violation where the prosecutor asked the defendant why he did not tell his story when he was arrested, defense counsel objected and moved for mistrial, the trial court denied the motion but sustained the objection and instructed the jury to ignore the question, and the prosecutor made no subsequent mention of defendant's silence). There was no *Doyle* violation here, and thus the trial court did not abuse its discretion by denying Szabo's motion for a mistrial.

# Conclusion

[33]     Based on the facts and circumstances of this case, we find that the trial court did not abuse its discretion when it admitted photos of video surveillance footage at trial, the evidence presented to the jury was sufficient to sustain Szabo's conviction, the trial court did not err when it refused to give Szabo's tendered

jury instruction on criminal trespass, and Officer Cyrier's testimony during trial did not amount to a *Doyle* violation. Accordingly, we affirm.

Vaidik, C.J., and Crone, J., concur.