## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 14 2020, 8:43 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Valerie K. Boots
Christopher M. Kunz
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Catherine E. Brizzi
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Brice Price, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff.* | December 14, 2020 <br><br> Court of Appeals Case No. 20A-CR-567 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Lisa F. Borges, Judge <br><br> The Honorable Anne Flannely, Magistrate <br><br> Trial Court Cause No. 49G04-1901-F4-2026 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Brice Price (Price), appeals his conviction for carrying a handgun without a license, a Level 4 felony, Ind. Code § 35-47-4-5(c).

We affirm.

# ISSUE

Price raises one issue on appeal, which we restate as: Whether the trial court abused its discretion in admitting two duplicate recordings of surveillance footage into evidence.

# FACTS AND PROCEDURAL HISTORY

On January 13, 2019, a resident of Motel 67 observed a man with a gun crouching outside of his window in the middle of the night and called the motel's manager, Amanda Lanum (Lanum). The motel had a security system consisting of twenty-three cameras spread over the premises, and those cameras fed into a large monitor. Lanum immediately called 9-1-1 and pulled up the surveillance camera vidoe and she saw a man standing at the rear corner of the motel building on top of a cart holding what appeared to be a handgun.

Within two minutes of receiving the dispatch report, Officer Adam Hazelwood (Officer Hazelwood) and Officer Aaron Clegg (Officer Clegg) of the Lawrence Police Department arrived at the scene. When the police arrived, Lanum watched the man throw the handgun down on the side of the cart and then walk out from behind the building on the surveillance footage. The officers

walked to the back of the building and found a man who was later identified as Price. The officers ordered Price to get down on the ground, and Price complied. As Price was getting down on the ground he stated, "thank God. Someone was chasing me." (Appellant's App. Vol. II, p. 23). Officer Hazelwood read Price his *Miranda* warning at which time Price denied having a gun because he was a "serious violent felon." (Appellant's App. Vol. II, p. 27). Officer Hazelwood went to check if there was another person at the back of the building, but he was unable to find anyone.

[6] Lanum showed the officers the video footage of Price. Because Lanum did not know how to directly copy the surveillance footage onto a blank disc, one of the officers used his phone to record two short videos of the footage playing on the surveillance monitor. One of them showed Price holding a gun and him placing the gun on the ground underneath a cart and walking away. Thereafter, Lanum directed the officers to where Price had dropped the gun, and Officer Clegg located a black .40 caliber Smith and Wesson handgun beside the cart on which Price had been standing.

[7] On January 27, 2019, the State filed an Information, charging Price with unlawful possession of a firearm by a serious violent felon, a Level 4 felony, and carrying a handgun without a license, a Level 5 felony. On January 14, 2020, the State moved to dismiss the Level 5 felony.

[8] On January 16, 2020, a bifurcated jury trial was held. During the first phase of Price's trial, Lanum testified that she saw a man, who was later identified as

Price, holding a gun at the back of the motel building, and she additionally stated that when the police arrived, Price threw the gun on the ground. The State also, among other evidence, moved to have the officers' cellphone recordings of the video surveillance admitted into evidence. Price objected, and argued, in part, that the cellphone video clips were not a complete recording of the surveillance footage taken on the night Price committed the offense. In response, the State argued that Lanum watched the motel's surveillance "in real time" and the cellphone video clips were a "fair and accurate depiction of what [Lanum] saw." (Tr. Vol. II, p. 108). At the close of the evidence, the jury found Price guilty of unlawful possession of a firearm. During the second phase of his trial, Price stipulated to being a serious violent felon and waived his right to a jury trial on that issue. On February 11, 2020, the trial court conducted a sentencing hearing and sentenced Price to eight years, with five years executed and three years suspended.

[9] Price now appeals. Additional information will be provided as necessary.

# DISCUSSION AND DECISION

[10] Price argues that the trial court abused its discretion when it admitted into evidence two duplicate recorded videos of the motel's surveillance footage.

[11] When ruling on the admissibility of evidence, the trial court is afforded broad discretion, and we will only reverse the ruling upon a showing of abuse of discretion. *Gibson v. State*, 733 N.E.2d 945, 951 (Ind. Ct. App. 2000). An abuse of discretion involves a decision that is clearly against the logic and effect of the

facts and circumstances before the court. *Id*. We consider the evidence most favorable to the trial court's ruling and any uncontradicted evidence to the contrary to determine whether there is sufficient evidence to support the ruling. *Id*.

[12] Generally, "[a]n original writing, recording, or photograph is required to prove its content" unless the Rules of Evidence or a statute provide otherwise. Ind. Evidence Rule 1002. However, "[a] duplicate is admissible to the same extent as an original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." Evid. R. 1003. Moreover, "[a]n original is not required and other evidence" of a recording's contents may be admitted into evidence if:

> (a) all originals are lost or destroyed, and not by the proponent acting in bad faith;
>
> (b) an original cannot be obtained by any available judicial process;
>
> (c) the party against whom the original would be offered had control of the original; was at that time put on notice, by pleadings or otherwise, that the original would be a subject of proof at the trial or hearing; and fails to produce it at the trial or hearing; or
>
> (d) the writing, recording, or photograph is not closely related to a controlling issue.

Evid. R. 1004.

[13]     On appeal, Price does not argue that a genuine question was raised as to the authenticity of the original surveillance footage, but only that it was unfair to admit the cellphone duplicate recordings of the surveillance footage because the videos were not a complete representation of the motel's surveillance footage.

[14]     The State argues that it was not necessary to copy and submit the entirety of the motel's surveillance footage. In *Rogers v. State*, 902 N.E.2d 871, 873 (Ind. Ct. App. 2009), the trial court convicted Rogers of theft based on surveillance camera footage that showed Rogers stealing from a CVS. Although that CVS had sixteen security cameras, only one camera focused on the area where the theft occurred. *Id*. at 877. The State submitted certain relevant portions of the surveillance footage from this camera, but it did not submit other surveillance footage from the other cameras. *Id*. The CVS supervisor testified that the redacted duplicates were "fair and accurate" portrayals of the originals, and we held that it was not unfair to admit these duplicates under the circumstances. *Id*.

[15]     Here, the State provided an explanation for why the original surveillance footage could not be produced. Lanum testified that she did not know how to reproduce the surveillance video on a DVD, and that prompted one of the officers to record the surveillance footage on his cellphone. Similar to *Rogers*, although only certain portions of the available surveillance footage were provided, Lanum testified that the cellphone recordings, which were a redacted version of the surveillance footage, were "fair and accurate representations" of the surveillance feed that she was watching on the night in question. (Tr. Vol.

II, p. 157). Similar to *Rogers*, it was therefore not necessary to submit the entirety of the additional irrelevant surveillance footage recorded on the motel's twenty-three security cameras for the duplicate recordings to be admissible. *Rogers*, 902 N.E. 2d at 877.

[16] Price also argues that the cellphone recordings did not contain the time that the original surveillance footage was captured, and that this information was "crucially relevant." (Appellant's Br. p. 13). Despite the lack of timestamps on the recorded footage, Lanum testified that after she received a call from one of the residents that there was a man with a gun crouching outside his window, Lanum called the police and pulled up the security camera for the specific area. She saw a man standing at the rear corner of the motel building on top of a cart holding what appeared to be a handgun. Additionally, the officers testified that they arrived at the motel within two minutes of receiving the dispatch report and that they turned on their body cameras as soon as they arrived. Upon arrival, the officers went directly to the southern corner of the motel and immediately confronted Price. Lanum also testified that, in real time, she personally observed Price hide the gun and walk directly into the officer's path on the live video feed. Notwithstanding the fact that the cellphone recordings of the motel's surveillance footage lacked a timestamp, there was evidence establishing that the man in the cellphone recordings was Price. Based on the foregoing, we therefore hold that the trial court did not abuse its discretion in admitting the cellphone recordings.

# CONCLUSION

[17]   In light of the foregoing, we hold that the trial court did not abuse its discretion in admitting the cellphone recordings of the motel's surveillance footage.

[18]   Affirmed.

[19]   Najam, J. and Crone, J. concur