McPHERSON REDEVELOPMENT CORPORATION, Plaintiff–Appellant,

v.

Eugene WATKINS, et al., Defendants–Respondents.

No. 55768.

Missouri Court of Appeals, Eastern District.

Nov. 7, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 21, 1989.

Application to Transfer Denied Feb. 13, 1990.

Gerald Carmody, Matthew Richardson & Sheila O'Malley, Bryan, Cave, McPheeters & McRoberts, St. Louis, for plaintiff-appellant.

John M. Putzel, Babione & Putzel, St. Louis, for defendants-respondents.

CRANDALL, Judge.

Plaintiff, McPherson Redevelopment Corp. (McPherson), appeals from the judgment in a trial of exceptions in a condemnation action, entered pursuant to a jury verdict, in favor of defendants (landowners) in the amount of $88,000. We affirm.

McPherson brought an action to condemn two contiguous parcels of real estate owned by landowners, one at 420 North Sarah and one at 4060 Westminister. The properties were essentially vacant lots with no improvements on them. The court ordered both parcels condemned and appointed condemnation commissioners to assess landowners' damages. The commissioners assessed damages for the taking of the two parcels at $55,000. Both parties filed exceptions to the assessment. Because McPherson paid the award to the court, the date of the taking was fixed on February 6, 1986. In *McPherson Redevelopment Corp. v. Watkins*, 743 S.W.2d 509 (Mo.App. 1987), this court reversed a $90,000 judgment entered after the first trial of the exceptions and remanded the case for new trial. Upon retrial the jury returned the $88,000 verdict.

McPherson's sole claim on appeal is that the trial court erred in excluding from evidence Exhibits 3 and 25, two video tapes. After a viewing in camera, the trial court sustained landowners' objections to each tape. McPherson contends that both video tapes should have been admitted because they were properly authenticated and were relevant to issues in the case.

Before addressing the admissibility of each video tape specifically, we consider some principles relative to the admission of video tapes in general. The same principles which govern the foundation for the admission of still photographs apply to the admission of motion pictures or video tapes. *See Cryts v. Ford Motor Co.*, 571 S.W.2d 683, 691 (Mo.App.1978). The party who offers a photo in evidence must show that it is an accurate, faithful representation of the place, person or subject it purports to portray. *Wood River Pipeline Co. v. Sommer*, 757 S.W.2d 265, 269 (Mo.App. 1988). This foundation may be established by any witness who is familiar with the subject matter of the photo and is competent to testify from personal observation. *Id.*

■ We first consider McPherson's Exhibit 25. Exhibit 25 portrayed the area immediately surrounding the lots in question. McPherson's offer of proof was that its witness would testify that the video tape fairly and accurately depicted the area around the subject properties as of the date of taking, February 6, 1986. Landowners objected to the tape because the video had been made the day before trial, two and one-half years after the date the parcels were deemed taken. Therefore, it did not reflect the area around the parcels as it appeared on the day of taking. In addition, it did not show the properties at issue.

McPherson contends that Exhibit 25 should have been admitted in evidence because the authentication requirement was met when its appraiser testified that the video tape accurately represented the area around the lots in question on the date the properties were deemed taken. *See Lustig v. U.M.C. Industries, Inc.,* 637 S.W.2d 55, 62 (Mo.App.1982). We acknowledge that McPherson's foundation of the video tape was adequate to meet its preliminary obligation for a prima facie showing of admissibility. *See* K. Hughes and B. Cantor, Photographs in Civil Litigation 179 (1973).

Proper authentication of a video tape, however, is not necessarily enough to justify receiving it into evidence. It is also essential that the contents of the video tape be relevant to issues in the lawsuit. In determining relevance, the trial court weighs the probative value of the evidence and its potential for confusion of the jury. *See* Evidence—Admission of Video Tape, 38 Mo.L.Rev. 111, 113–114 (1973).

■ The fact that a video tape is taken before or after an event does not make it inadmissible if the extent of the changes are explained, so that the video tape, as explained, will give an understanding of the conditions that existed at the time in question. *See Rust & Martin, Inc. v. Ashby,* 671 S.W.2d 4, 9 (Mo.App.1984); *see also Berry v. Federal Kemper Ins. Co.,* 621 S.W.2d 948, 951 (Mo.App.1981). If the changes do not rob the video tape of proba-

tive value, the tape is admissible in evidence; and any inaccuracies or unreliability can be brought out on cross-examination, thus enabling the jury to give proper weight to the evidence. *State ex rel. State Highway Comm'n. v. Yackel,* 445 S.W.2d 389, 391 (Mo.App.1969). If, on the other hand, the changes are so substantial that the video tape lacks probative value, the video is properly excluded from evidence. *See Cryts,* 571 S.W.2d at 691.

■ The issue to be determined in admitting or rejecting a video tape is whether it is practical, instructive, and calculated to assist the trier of fact in understanding the case. *Bailey v. Valtec Hydraulics, Inc.,* 748 S.W.2d 805, 806 (Mo.App.1988). We accord great weight to the ruling of the trial court on the admissibility of a video tape; and that ruling will not be disturbed on appeal absent an abuse of discretion. *Id.* An abuse of discretion is "a judicial act which is untenable and clearly against reason and which works an injustice." *Mac–Fab Products, Inc. v. Bi–State Dev. Agency,* 726 S.W.2d 815, 818 (Mo.App.1987).

■ Here, McPherson, as the proponent of Exhibit 25, did not elicit any testimony regarding what differences, if any, existed between the area as represented in the video tape and the area as it appeared on the date relevant to the condemnation action.[1] In addition, landowners, as the opponents of the video tape, did not voir dire the witness with regard to any dissimilarities between the area as depicted in Exhibit 25 and the area as it looked on the date of taking.

Against the backdrop of the record before us and based upon our own viewing of the video tape, it is doubtful that there was sufficient evidence before the trial court upon which the court could properly have exercised its discretion in excluding Exhibit 25. Given the facts of this case, Exhibit 25 appears to have been admissible, its weight to be determined by the jury.

■ McPherson, however, was not prejudiced by the exclusion of the video tape.

---

1. The more prudent course for an attorney introducing a video tape, which was not made at the time pertinent to the litigation, would be to use the authenticating witness to explain any distortions or misleading elements in the video before moving for its admission. *See* 9 Am.Jur. Proof of Facts, Photographs as Evidence 151 (1960).

Ten color photographs were offered by McPherson and admitted into evidence. Those photographs depicted the area surrounding the properties at issue in detail. The contents of Exhibit 25, even if admissible, would merely have been cumulative to these photographs. There was no prejudicial error in the trial court's exclusion of McPherson's Exhibit 25 from evidence.

We next consider the exclusion of McPherson's Exhibit 3. Exhibit 3 depicted the nine comparable properties, as well as the areas surrounding them. Landowners' appraiser used the sale prices of these comparable properties to establish the value of the parcels in question. McPherson sought to introduce the video tape "to show those comparables [were] not truly comparables." Landowners objected to the admission of the tape because the video of the comparables was made only a short time prior to trial, some four to six years after the sales of the comparable properties, and because it did not reflect how the comparable properties looked at the time each was sold, the point in time which was relevant to this action.

Our review is guided by the same principles enunciated in our discussion of the exclusion of Exhibit 25. We acknowledge that McPherson's appraiser's testimony that the video tape accurately and fairly reproduced the comparable properties laid a proper foundation for the admission of the tapes. *See Wood River Pipeline,* 757 S.W.2d at 269. As discussed above, however, the video tape must be not only properly authenticated but also relevant to issues in the case. In determining relevance, the court looks at whether the conditions portrayed in the video accurately reflect the conditions in existence at the time relevant to the litigation. If changes have occurred and they are irrelevant, the film may still be admissible.

In the present case, landowners' appraiser testified that the properties used as comparables were vacant lots or lots occupied by buildings which were torn down shortly after sale. The primary purpose of the comparables was to use their sale prices to arrive at the value of the vacant lots in question. The comparables were chosen by landowners' appraiser precisely because they were similar to the parcels at issue.

There were no lots similar to those used as comparables depicted in Exhibit 3, but rather only improved property. There was no evidence in the record as to what changes had occurred either in the comparables or in the areas surrounding the comparables during the four to six years since the respective properties had been sold. The trial court is under no duty to separate the relevant from the irrelevant information and may reject the entire video tape if it contains irrelevant information. *See* D. Filter, The Demonstrative Evidence Sourcebook 138 (1985).

The sale prices of the comparables were central to the issue of the value of the properties in question. It was reasonable for the trial court to conclude that it would be neither instructive nor helpful to the jury to view comparables which no longer looked as they did when sold, but which now contained improvements. We find that the trial court did not abuse its discretion in refusing to admit Exhibit 3 into evidence.

The judgment of the trial court is affirmed.

PUDLOWSKI, P.J., and KAROHL, J., concur.