Opal NASH, Appellant,

v.

STANLEY MAGIC DOOR, INC., Respondent.

No. 61758.

Missouri Court of Appeals, Eastern District, Division Four.

Oct. 26, 1993.

John Beger, Patrick King, Stephen Gaunt, Rolla, for appellant.

F. Douglas O'Leary, St. Louis, for respondent.

CARL R. GAERTNER, Judge.

Plaintiff, Opal Nash, appeals from the judgment entered upon a jury verdict in favor of defendant, Stanley Magic Door, Inc., in a personal injury action. We affirm.

Stanley Magic manufactures automatic doors which operate on a system of electronics and pneumatics. Generally, these doors are activated by pressing a push plate which provides an electric current that opens an air line and thereby supplies air to a pnuematic cylinder, causing the cylinder to move and open the doors. A timer in the system, which can be adjusted, causes the doors to automatically close after a certain time has elapsed. Also adjustable is the speed at which the doors close. The system is usually equipped with one or more safety mats which are placed on the floor in the doorway and cause the doors to remain open if anyone is on the mats.

During a 1979 remodeling and extension of Phelps County Medical Center in Rolla, Missouri, a Stanley Magic fire-rated door system

was installed in the hospital's surgical recovery room. The recovery room must be exited through these automatic doors which are activated by pushing a push plate inside the recovery room which causes the doors to swing open into the hallway. There is a safety mat on the floor on the hallway side of the doors which is supposed to prevent the doors from closing while anyone is on the mat.

Nash was a nurse's aide in the obstetrics unit of the hospital. On December 28, 1983, Nash and her co-worker Darlene Hawkins went to the recovery room, picked up a patient and began to transport the patient on a gurney to the obstetrics unit. Someone activated the push plate, and the exit doors opened.[1] Hawkins first went through the doorway, pulling the foot of the stretcher. Nash was at the side of the gurney, guiding it through the doorway. After the gurney's wheels had passed over the safety mat but while she was still on the mat, the door suddenly shut and crushed Nash between the door and the gurney. A crash bar, which protrudes from the door, hit Nash in her lower back, causing a sharp pain. Hawkins and Wilma Bell, another hospital employee, manually pushed the door open while someone activated the push plate. Nash was then able to straighten up and walk, and eventually she and Hawkins transported the patient.

Over the next few months, Nash continued to suffer pain. She underwent surgery on her lower back in September 1984. She returned to work but eventually left her job in May 1988 because she was unable to perform her duties due to her back problems. However, in January 1990, she obtained a job as a sewing machine operator at Bay Manufacturing.

On May 23, 1988, Nash filed suit against the architect who approved the plans and specifications for the recovery room exit doors, McCarthy Brothers Construction Company, and Stanley Magic.[2] With regard to Stanley Magic, Nash sought to recover damages for the injuries she sustained in the accident based on a theory of defective design of the doors.

After a four-day trial, the jury returned a verdict in favor of Stanley Magic. The trial court denied Nash's motion for a new trial and entered judgment in accord with the verdict. On appeal, Nash claims the trial court abused its discretion because it refused to allow one of Nash's witnesses to testify about a similar accident in Phelps County Medical Center involving a different door, because it admitted without proper foundation the videotape of Stanley Magic's expert witness, and because it improperly rejected Darlene Hawkins' deposition testimony which would have rebutted a relevant portion of Stanley Magic's evidence.

## I. Evidence of a Similar Occurrence

In her first point on appeal, Nash contends the trial court erred in refusing to admit the testimony of her supervisor, Sandy Shelton, concerning a similar incident involving a different door in Phelps County Medical Center. Nash argues the doors were sufficiently similar to qualify Shelton's accident as a prior similar occurrence; thus, her testimony should have been admitted to prove Stanley Magic had knowledge of a dangerous defect in its doors.

In an offer of proof, Nash's attorney stated that Shelton would testify that when pushing an incubator through a different but similarly constructed door it suddenly closed upon her. The testimony was offered "simply on the issue of force[,] of the force of that door striking her arm". The speed with which each of the doors closed was subject to individual adjustment and, as the trial court noted in denying the offer of proof, "she can't testify that the force on one door [was] the same as the other one unless she had both of them close on her."

■ Moreover, Nash submitted her case to the jury under an instruction which required the jury to find at the time Stanley Magic sold the automatic door system it "was

---

1. At trial, none of the witnesses nor Nash could recall who activated the doors by pressing the push plate.

2. Nash's action against the architect and McCarthy Brothers was dismissed without prejudice on February 3, 1992.

then in a defective condition."[3] Bearing in mind the adjustability of the doors, the fact that four years after it was sold and installed a door similar to the door which closed on plaintiff forcibly closed upon another person has no relevance to the condition of the door when sold.

On appeal, Nash relies on such cases as *Pierce v. Platte–Clay Electric Co-op, Inc.*, 769 S.W.2d 769 (Mo. banc 1989) and *Eagleburger v. Emerson Electric Co.*, 794 S.W.2d 210 (Mo.App.1990) and argues that the similar incident involving a different door was admissible and relevant to show defendant's knowledge of the defect. *Pierce* and *Eagleburger* stand for the proposition that evidence of a prior occurrence similar to the event in which a plaintiff was injured may under some circumstances be admissible in order to prove the defendant had notice of a dangerous condition. Proof of such notice is an element of a case based upon a defendant's negligent failure to warn of or repair a dangerous condition. However, whatever notice may have been furnished to Stanley Magic by knowledge that a different, adjustable door forcibly closed upon a nurse a few weeks before the incident in which Nash claims to have been injured, it has no probative value regarding the issue of the defective condition of the door when sold and installed four years before.

Finally, Nash argues the evidence of the Shelton incident should have been admitted under the doctrine of curative admissibility. This doctrine allows a party to reply to inadmissible evidence introduced by an opposing party with similar evidence if its introduction would remove any unfair prejudice caused by the admission of the earlier inadmissible evidence. *Phoenix Redevelopment Corp. v. Walker*, 812 S.W.2d 881, 886 (Mo.App.1991). Nash contends Stanley Magic invited Shelton's testimony by continually pointing out the absence of previous or subsequent accidents involving the recovery room door. In particular, Nash points to the testimony Stanley Magic elicited on cross-examination from Harold LaPere, the original architect of the recovery room door system, and James Brasure, a hospital maintenance worker. LaPere testified that Nash's lawsuit was the only complaint he had ever heard that the hospital's recovery room doors were not properly working. Brasure testified that from 1982 until the time of trial in 1992 he inspected and maintained the doors monthly and during that time no one had ever reported a complaint or problem with the door system.

The primary fallacy in Nash's argument is the failure of its basic premise, that the evidence of no accidents or complaints was inadmissible. It is now well-settled in Missouri that evidence of the absence of prior and subsequent accidents is relevant and admissible to show: 1) absence of defect or condition alleged; 2) lack of causal relationship between the injury and the defect or condition charged; 3) the nonexistence of an unduly dangerous situation; or 4) want of knowledge of or grounds to realize the danger. *Carbin v. National Super Markets, Inc.*, 823 S.W.2d 93, 94 (Mo.App.1991), citing *McCormick On Evidence*, § 200 p. 591–92 (3rd ed. 1984). *See also, Pierce v. Platte–Clay Electric Co-op., Inc.*, 769 S.W.2d at 774; *Luthy v. Denny's, Inc.*, 782 S.W.2d 661, 665–66 (Mo.App.1989); *McJunkins v. Windham Power Lifts, Inc.*, 767 S.W.2d 95, 97–100 (Mo.App.1989). On the basis of these authorities, Stanley Magic did not exceed the bounds of propriety in adducing evidence of twelve years of daily usage of the automatic doors without accident or complaint other than plaintiff's, and in arguing that such absence created an inference that the doors were not defective or dangerous. The trial court did not abuse its discretion by excluding the evidence of the Shelton incident.

## II. Videotape Evidence

Nash also contends the trial court erred by admitting videotapes made by Stanley Magic's expert witness Carl Bock to show how the recovery room doors operated. In two

---

**3.** Although plaintiff's petition alleged the automatic doors when sold were in a defective condition in certain specified manners, the instruction requires the jury to find only that the doors were defective when sold without any specification of the nature of the defect. We need not address the propriety of this instruction.

videotapes Bock made in preparation for his testimony, he made various changes in the door system to show that the doors' opening and closing speed and closing force could be altered. He also stood in front of the door and allowed the door to close and strike him in the back, and he showed the door closing on a gurney. Over Nash's objection, the trial court permitted Stanley Magic to play the entire tape for the the the jury.

■ The admissibility of a videotape depends on whether it is practical, instructive and calculated to assist the jury in understanding the case. *Bailey v. Valtec Hydraulics, Inc.,* 748 S.W.2d 805, 806 (Mo.App.1988). We grant great deference to the trial court's ruling on the admissibility of a videotape and will not disturb such a ruling absent an abuse of discretion. *Id.*

■ Nash asserts Stanley Magic failed to establish a proper foundation for admitting the tapes because: (1) they were made the morning of the trial, eight years after the accident; (2) the doors had been adjusted before Bock performed the demonstrations in the tapes, and there was no evidence the doors in the tapes were operating similar to the way they functioned at the time of Nash's accident; and (3) the demonstrations showing the doors close on Bock's back and on a gurney were prejudicial recreations of the accident without foundational evidence showing these demonstrations were similar to Nash's accident.

The fact that a videotape is made after an event does not render it inadmissible, provided that any changes are explained so that the videotape coupled with the explanation will give an understanding of the conditions that existed at the time of the event. *McPherson Redevelopment Corp. v. Watkins,* 782 S.W.2d 690, 692 (Mo.App.1989). If the changes do not detract from the tape's probative value, the tape is admissible, and any inaccuracies or unreliability can be exposed on cross-examination, thus enabling the jury to give proper weight to the evidence. *Id.* The videotape should be excluded only if the changes are so significant that the tape lacks probative value. *Id.*

After carefully reviewing the videotapes in this case, we find nothing indicating the tapes lack probative value. Stanley Magic clearly established the tapes were offered as a demonstrative visual aid to complement Bock's testimony. Although it is true Nash offered a videotape showing the operation of the doors, Bock's tape delved more deeply into the intricacies of the doors' mechanical features. Given the complexities of this door system, we find the videotape was essential to helping the jury understand Bock's testimony and the physical factors of the doors' design and operation. See *Beers v. Western Auto Supply Co.,* 646 S.W.2d 812, 815–16 (Mo.App.1982) (citing a number of cases where videotapes were used to explain the physical functions of complex mechanical operations). Indeed, Bock, an expert in the field who works with Stanley Magic doors, had to visit Phelps County Medical Center and observe the physical layout and operation of the recovery room doors in order to properly evaluate the door system.

Furthermore, it was unequivocally conceded that Bock altered some of the doors' functions during the taped demonstrations, and it was clearly established that Bock did not attempt to recreate the accident. There was no contention the doors in the tape were operating in a similar fashion to the way they functioned at the time of Nash's accident. The tape simply highlighted the way the doors operated, the doors' safety features and how the system could be manually manipulated. The trial court did not abuse its discretion by admitting the videotape. Nash's second point is denied.

### III. Rebuttal Evidence

Nash argues the trial court erred in rejecting Darlene Hawkins' deposition because it would have rebutted evidence Stanley Magic offered in its case in chief regarding the closing force of the recovery room doors and the onset of Nash's pain.

Nash contends Hawkins' deposition would have rebutted the testimony of John Hulse and Dr. Edwin Carter, two of Stanley Magic's witnesses. Hulse, a Stanley Magic product safety engineer, testified the only way the accident could have occurred was if Nash

stepped on the safety mat after the doors began to close. He further testified the doors have "limited closing force." Dr. Carter, in response to a question asking him to recount Nash's medical history which she related to him, testified that she told him she had been hit in the back by a door, she needed help being extricated, and "[l]ater she said she had low back pain...." Hawkins, who witnessed the accident, stated in her deposition that the force of the door pinned Nash between the door and gurney and when she was finally rescued, "she had tears in her eyes and she was obviously in pain."

■ The admissibility of rebuttal evidence is within the trial court's discretion. *Gassen v. Woy*, 785 S.W.2d 601, 604 (Mo. App.1990). A party cannot, as a matter of right, offer in rebuttal evidence which was appropriate or should have been proffered in chief, even if it tends to contradict the adverse party's evidence. *Bean v. Riddle*, 423 S.W.2d 709, 719 (Mo. banc 1968). The trial court may in its discretion, and generally should, decline to allow a party to admit evidence on rebuttal that supports his case in chief. *Id.* Quite clearly, Hawkins' depostion would have been admissible in Nash's case in chief.

The judgment of the trial court is affirmed.

CRANE, and CRAHAN, JJ., concur.