Susan **PHIROPOULOS**,
Plaintiff/Appellant,

v.

**BI–STATE DEVELOPMENT AGENCY**,
Defendant/Respondent.

No. 67151.

Missouri Court of Appeals,
Eastern District,
Division Four.

Aug. 8, 1995.

Motion for Rehearing and/or
Transfer to Supreme Court Denied
Sept. 25 and Oct. 3, 1995.

Application to Transfer Denied
Nov. 21, 1995.

Kristin Kay Bryant, Tony Gribesbach, St. Louis, for Susan Phiropoulos.

Jim B. James, St. Louis, for Bi–State Development Agency.

SIMON, Judge.

Susan Phiropoulos (Phiropoulos) appeals from a judgment against her in the Circuit Court of the City of St. Louis in favor of Bi–

State Development Agency (Bi–State). Phiropoulos contends that the trial court abused its discretion by permitting the jury to view a videotape reenactment prepared by Bi–State. We reverse and remand.

■ On review the trial court is granted great deference in ruling on the admissibility of a videotape. *Nash v. Stanley Magic Door, Inc.*, 863 S.W.2d 677, 681[7] (Mo.App.E.D. 1993). That ruling will not be disturbed unless the trial court abused its discretion. *Id.*

This action arose from an injury Phiropoulos sustained while exiting a Bi–State bus. In her petition, Phiropoulos alleged negligence on the part of Bi–State's bus driver in that he failed to: (1) keep a careful lookout for passengers exiting the bus; (2) allow her sufficient time in which to exit the bus; and (3) stop when it was obvious that her arm was caught in the doors of the bus (The record on appeal does not contain the entire trial record, but in her appeal she only mentions her purse).

Phiropoulos testified that on the morning of the accident she was seated on a Bi–State bus across from the rear exit doors and was carrying her purse. She did not know the number of the bus, but she was able to give a description of it and the driver to a Bi–State representative with whom she spoke after the incident. She signaled the bus to stop and waited for it to come to a rest. She then opened the rear exit doors with her right hand and turned sideways, putting her right foot adjacent to the curb and her left foot on the curb. She demonstrated to the jury during her testimony exactly how she stepped off the bus and how she held her purse. She then released the doors and it closed on her purse, a part of her purse, or the purse straps, and the bus moved away injuring her right arm, right leg, and right ankle. She further testified that the rubber flanges or sealing on each of the rear exit doors did not meet flush and at some places there were up to two-inch gaps between them.

Lanzo Smith (Smith), Bi–State's bus operator/instructor, testified on direct examination by Phiropoulos about how a bus' interlock system works. First, the passenger signals when he or she wishes to get off the bus. When the bus comes to a stop, the interlock system comes into play. This system locks the brakes on the back wheels of the bus and also deactivates the bus' accelerator. When the system is activated, it is impossible for the bus to move. The system is turned on when the bus driver activates it by pulling a lever. Then and only then can a passenger exit the bus. In order to exit the bus, the passenger must push the doors open. When the passenger lets go of the doors, they automatically close. For the bus to move again, the driver must deactivate the interlock system.

The interlock system can only be turned on or off when the doors are in a closed position. The door edges have rubber flanges, a rubber sealing, on them. These flanges overlap when the doors are in a closed position and prevent wind and rain from coming inside the bus. If something is caught between the doors, the system cannot be turned on or off. However, it is possible for the doors to close if a small object, such as a purse strap, is caught between the doors.

Bi–State presented no evidence as to the condition of the bus or its doors at the time of the accident and whether any changes had been made since then. However, Bi–State called Smith, who testified for both Phiropoulos and Bi–State, to narrate a videotape made by Bi–State. The tape was admitted into evidence over Phiropoulos' objection.

The videotape began with a view of the bus' number, 8343, the one which Bi–State had told Smith was involved in the incident. The doors on the bus depicted in the video were in good condition and the flanges did not show any wear. The tape went on to show how the interlock system operated.

The videotape also showed a woman exiting the rear doors of the bus numerous times. She exited the bus twice without a purse and several times with a purse. In two other scenes, her purse became caught between the doors of the bus while she was exiting. The videotape also showed two scenes of the woman letting the doors of the bus close on the purse and purse straps.

Phiropoulos objected to the showing of the videotape on the grounds that it was a reenactment of the incident and was not substantially similar to the actual events. In response to the objection, Bi–State's attorney stated:

Mr. James (Bi–State's atty.): Judge, we are trying to keep close to what plaintiff testified with the right foot down to the street, left foot on the curb. Obviously we are not trying to do an exact reproduction. It is based on what the plaintiff said and it shows the working of the door. It is similarly demonstrative to the jury to get a better understanding.

The Court: Is he going to testify it is similar to the door, all 83's have that same type door and flanges?

Mr. James: Now he may on cross testify he doesn't know if these flanges have been replaced or not.

The trial court overruled Phiropoulos' objection and allowed the tape to be shown. The trial judge did not view the videotape before ruling on Phiropoulos' objection.

On rebuttal, Phiropoulos was allowed to testify over Bi–State's objection. She testified that the flanges on the bus in the videotape were not similar to the flanges on the bus that she was riding on the day of the accident. The flanges depicted in the videotape were in good condition, whereas the flanges on the bus she rode did not meet flush and had a gap about one half of an inch between both flanges. She went on to testify that the bus in the videotape was stopped at a different angle than the one she rode and that the woman in the videotape was carrying a different type of purse and the woman was not positioned the same way as she was when she exited the bus on the day of the accident.

At the close of trial, the jury returned a verdict in favor of Bi–State. Phiropoulos' motion for a new trial was denied.

In her only point, Phiropoulos contends that the trial court abused its discretion in permitting the jury to view the videotape prepared by Bi–State because it was a reenactment of the incident without showing it was substantially similar to the incident.

The same principles which govern the foundation for the admission of photographs apply to the admission of videotapes. *McPherson Redevelopment Corp. v. Watkins,* 782 S.W.2d 690, 691[1] (Mo.App.S.D.1989). The party offering a videotape in evidence must show that it is an accurate and faithful representation of what it purports to show. *Id.* The foundation may be established by any witness who is familiar with the subject matter of the tape and is competent to testify from personal observation. *Id.* The admissibility of a videotape depends on whether it is practical, instructive, and calculated to assist the jury in understanding the case. *Nash v. Stanley Magic Door, Inc.,* 863 S.W.2d 677, 681[6] (Mo.App.E.D.1993).

Here, Bi–State made no showing that the videotape was an accurate and faithful representation of the reenactment of the incident. Bi–State claimed that the videotape was useful to the jury in giving an understanding of how the doors on the bus work. Bi–State also said that they were not trying to do an exact reproduction and were trying to stay close to what Phiropoulos testified.

In *Nash,* 863 S.W.2d 677, the plaintiff was transporting a patient at the Phelps County Medical Center in Rolla, Missouri, when a door made by defendant closed on plaintiff, crushing her between the door and a gurney. *Id.* at 679. A videotape introduced by defendant at trial showed a door made by defendant striking their expert witness in the back and another scene of the door closing on a gurney. *Id.* at 681. Plaintiff objected to the playing of the videotape made by defendant, contending that he failed to establish a proper foundation for admitting the tape because the demonstrations were recreations of the accident without showing that they were similar to plaintiff's accident. *Id.* The *Nash* court ruled that defendant clearly established that this was not a recreation of the accident. *Id.* It is clear that the scenes in the *Nash* videotape were not the same as the door closing on plaintiff and crushing her between the door and gurney.

Bi–State's videotape, on the other hand, has no such distinction. Bi–State's video, where a woman is shown exiting the rear

doors of the bus numerous times, is an attempt to recreate Phiropoulos' incident. Without a proper foundation, the videotape is inadmissible.

We find that the trial court's admission of Bi–State's videotape into evidence without a proper foundation was an abuse of discretion. *Richardson v. State Hwy. & Transp. Com'n*, 863 S.W.2d 876, 881[15] (Mo. banc 1993).

Judgment reversed and remanded.

AHRENS, P.J., and KAROHL, J., concur.