

# In the Missouri Court of Appeals
# Eastern District

## <u>DIVISION ONE</u>

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED112420 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of Ste. Genevieve County |
| v. | ) | Cause No. 20SG-CR00645-01 |
| | ) | |
| LEONARD H. BURST, | ) | Honorable Jerel L. Poor II |
| | ) | |
| Appellant. | ) | Filed: April 15, 2025 |

### Introduction

Appellant Leonard Burst appeals the trial court's judgment on a jury verdict convicting him of unlawful use of a weapon and assault in the fourth degree. Appellant argues the trial court erred in admitting a video of his confrontation with a police sergeant on the day of the charged events because the video lacked foundation and was irrelevant. Appellant also argues the trial court erred in overruling his objection that the State's closing argument shifted the burden of proof to Appellant. Finally, Appellant argues the trial court plainly erred by omitting language from a jury instruction that the jury was free to "believe all, any part, or none of a witness's testimony" as required by the Missouri Approved Instructions-Criminal (MAI-CR) 4th 402.01.[1] We affirm the judgment of the trial court.

---

[1] All instruction references are to MAI-CR 4th (2022), unless otherwise indicated.

**Factual and Procedural Background**

Facts

The facts, in the light most favorable to the jury verdict, are as follows. *See State v. Bowman*, 663 S.W.3d 916, 918 n. 1 (Mo. App. W.D. 2024).

As of October 2020, Appellant lived with his 90-year-old mother.[2] On October 6, 2020, Appellant's mother left the residence, drove to a nearby school parking lot, and called the Missouri Department of Health and Senior Services. She asked for a place to stay for the night because she and Appellant had had an argument.

An elder abuse investigator from the Department of Health and Senior Services responded to Appellant's mother's location. After discussing with Appellant's mother what happened between her and Appellant, the investigator called for assistance pursuant to standard procedure. In response to the investigator's request, Sheriff's Deputy T.G. arrived in uniform to assist.

After further discussion, Appellant's mother, the investigator, and Deputy T.G. went to the residence. When they arrived, Appellant's mother led Deputy T.G. and the investigator into the residence through the front door. There, they came across Appellant in the living room. Deputy T.G. immediately identified himself as a member of the Sheriff's Office, explained he was there to talk to Appellant, and asked what had happened between Appellant and his mother earlier that day.

Instead of responding to Deputy T.G.'s question, Appellant yelled at his mother. He shouted that she was getting scammed, was losing all their money, and was putting Appellant in

___

[2] The personal identifying information of victims and witnesses has been omitted pursuant to RSMo § 509.520 (Supp. 2023).

harm's way. The investigator told Appellant there was no reason to yell. Appellant responded that it was his house and the investigator and Deputy T.G. were not going to tell him what to do.

The situation escalated when Appellant, continuing to raise his voice, exclaimed that since Deputy T.G. had a gun, he should be able to have a gun too. Appellant then walked to a closet door approximately eight to twelve feet away, where he grabbed a black semi-automatic handgun and put it behind his back. Appellant kept his hand on the handgun behind his back.

Appellant began walking towards the investigator and Deputy T.G. and told them to leave his house. According to the testimony of Deputy T.G. and the investigator, and by Appellant's own admission, Appellant said that if Deputy T.G. took another step towards him, he would "pop" him. Appellant testified he took out his gun and threatened to "pop" Deputy T.G. to "warn" him. Appellant's actions put Deputy T.G. in imminent fear for his life and for the safety of the investigator and Appellant's mother.

Deputy T.G. and the investigator left the house to de-escalate the situation. They left Appellant's mother inside the house because Appellant was between her and Deputy T.G., and Deputy T.G. wanted to avoid further escalation. Deputy T.G. and the investigator backed away to a safe distance, and Deputy T.G. contacted his supervisor, Sergeant J.D.

Sergeant J.D. and other officers arrived on the scene. What followed was a standoff between Appellant and law enforcement officers lasting approximately five hours. During the standoff, Appellant engaged in a brief confrontation with Sergeant J.D., which was video recorded.

## Procedural Background

Based on the initial confrontation with Deputy T.G., Appellant was charged with felony unlawful use of a weapon in violation of Section 571.030, in that he knowingly exhibited, in the presence of one or more persons, a handgun, a weapon readily capable of lethal use, in an angry

3

or threatening manner. He also was charged with misdemeanor assault in the fourth degree in violation of Section 565.056, in that he purposely placed Deputy T.G. in apprehension of immediate physical injury by exhibiting a handgun in an angry or threatening manner.[3]

At Appellant's jury trial, the State offered Exhibit 38, a one-minute and 20-second video depicting part of Appellant's confrontation with Sergeant J.D. Sergeant J.D. testified that he was present and, based on his personal knowledge, the video accurately depicted the confrontation. After the video was admitted into evidence without objection, Appellant's counsel asked to *voir dire* Sergeant J.D. before publication of the exhibit to the jury. Defense counsel's *voir dire* focused on the video's chain of custody and whether the video was edited or was complete. After questioning Sergeant J.D., counsel objected to a lack of foundation to establish the exhibit's "reliability." The trial court overruled the objection, and Exhibit 38 was played to the jury.

Exhibit 38 depicts Appellant on his front porch shouting at Sergeant J.D., who is in Appellant's yard trying to get Appellant to voluntarily leave the house. Appellant demands the sergeant come into the house, but threatens "if you put a hand on me, I'll kill your whole family." This interaction occurred a few hours after the charged incident between Appellant and Deputy T.G.

In closing argument, defense counsel alleged the officers lied and inquired why the State had not charged them with perjury. Defense counsel argued that police officers lie "[b]ecause it's easy. Because they have experience at it. They get good at it. And because [the State] is never going to prosecute them." Defense counsel concluded "when you find him not guilty, . . . what other conclusion can anyone make, is that you do not believe the police officers."

---

[3] Unless otherwise indicated, all statutory references are to RSMo (2016) as amended.

In rebuttal argument, the State responded: "Ladies and gentlemen, everything [defense counsel] just told you, I would argue is absolutely true, if you believe the defendant and [his mother]. That all hinges on whether you believe them, and in order to believe – ". Defense counsel interjected with an objection to "burden shifting." The trial court overruled the objection. The State continued:

> It all is based on that. You have to believe -- because there's two stories here. There's the story that was told by [Deputy T.G.] and [the investigator] and Staff Sergeant [J.D.]. And there's the story that's told by the defendant and his mother.
> . . . .
> But you have to believe the defendant and his mother in order to find the defendant not guilty. And you have to disbelieve [Deputy T.G.] and [the investigator].

The trial court held several instruction conferences. At the informal pre-trial conference, the court referenced the mandatory instructions, including MAI-CR 4th 402.01, the form instruction on witness credibility. At the end of the trial, the court held another instruction conference, again referring to MAI-CR 4th 402.01, the witness credibility instruction submitted by the State as Instruction No. 1. Appellant did not object during either instruction conference. Instruction No. 1 read in relevant part:

> In your determination of the facts, you alone must decide upon the believability of the witnesses and the weight and value of the evidence.
>
> In determining the believability of a witness and the weight to be given to testimony of the witness, you may take into consideration the witness' manner while testifying; the ability and opportunity of the witness to observe and remember any matter about which testimony is given; any interest, bias, or prejudice the witness may have; the reasonableness of the witness' testimony considered in the light of all of the evidence in the case; and any other matter that has a tendency in reason to prove or disprove the truthfulness of the testimony of the witness.

The jury found Appellant guilty as charged on both counts. The trial court entered judgment and sentenced Appellant to concurrent prison terms of four years for unlawful use of a weapon and six months for assault in the fourth degree.

Appellant now appeals the trial court's judgment.

5

**Discussion**

Appellant raises four points on appeal. In his first two points, Appellant argues the trial court erred in admitting the video exhibit for lack of foundation and relevancy. In his third point, Appellant argues the trial court erred by allowing the State to argue that the jury could find Appellant not guilty only if it believed his testimony and that of his mother, and disbelieved the testimony of Deputy T.G. and the investigator, because the argument shifted the burden of proof to Appellant. In his fourth point, Appellant argues the trial court plainly erred in failing to instruct the jury that it was free to "believe all, any part, or none of a witness's testimony" as required by MAI-CR 4th 402.01.

Point I

First, Appellant argues the trial court abused its discretion in admitting Exhibit 38, the video depicting Appellant's confrontation with Sergeant J.D. during the standoff, for lack of foundation. Appellant elaborates that the video was used by the prosecution to prove Appellant's charged conduct hours earlier, Sergeant J.D. was not present at the time of the charged conduct, Sergeant J.D. was not able to establish that the recording was complete or testify to its chain of custody, and Exhibit 38 was not otherwise admissible.

*Preservation and Standard of Review*

When the State introduced Exhibit 38, Sergeant J.D. testified that he was present for his confrontation with Appellant and, based on his personal knowledge, the video accurately depicted the confrontation. With this foundation, the State offered Exhibit 38 into evidence, and the trial court admitted it without objection. Only then did Appellant's counsel object to foundation.

Whether a sufficient foundation supports admission of an exhibit into evidence "is a decision within the broad discretion of the trial court." *State v. Minner*, 256 S.W.3d 92, 97 (Mo.

banc 2008). Generally, we review the admission of evidence for abuse of discretion. *See State v. Irby*, 254 S.W.3d 181, 187 (Mo. App. E.D. 2008).

"Under Missouri law, objections must be made at the earliest possible opportunity, and a failure to object constitutes waiver of the claim on appeal." *Church v. CNH Industrial America, LLC*, 671 S.W.3d 829, 841 (Mo. App. W.D. 2023) (quoting *State v. Jones*, 637 S.W.3d 526, 535 (Mo. App. W.D. 2021)) (internal quotations omitted). "Preservation of evidentiary questions for appeal requires an objection at the time the evidence is sought to be introduced . . . ." *Brown v. Brown*, 530 S.W.3d 35, 44 (Mo. App. E.D. 2017). Because Appellant objected to foundation only after the exhibit was admitted into evidence, the issue is not preserved and we may review only for plain error. *See* Rule 30.20.[4]

Rule 30.20 provides that "plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Plain error review is a discretionary two-step process. *See State v. Hunt*, 451 S.W.3d 251, 260 (Mo. banc 2014). First, we must determine whether the claimed error constitutes plain error affecting substantial rights. *State v. Brandolese*, 601 S.W.3d 519, 526 (Mo. banc 2020). This requires a "'determination of whether the claim of error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted.'" *State v. Vitale*, 688 S.W.3d 740, 746 (Mo. App. E.D. 2024) (quoting *State v. Shepard*, 662 S.W.3d 761, 772 (Mo. App. E.D. 2023)). Plain errors are those which are "evident, obvious, and clear." *Id.* (quoting *Shepard*, 662 S.W.3d at 772). "Only if plain error is found under step one may we proceed to the second step to determine whether the claimed error resulted in manifest injustice or a miscarriage

---

[4] All Rules references are to the Missouri Supreme Court Rules (2023), unless otherwise indicated.

7

of justice." *Id.* To show manifest injustice or a miscarriage of justice, a defendant must demonstrate "outcome-determinative error." *Id.* (quoting *State v. Martin*, 661 S.W.3d 337, 340 (Mo. App. S.D. 2023)).

*Analysis*

The trial court clearly did not err in overruling Appellant's foundational objection to Exhibit 38. "'The party offering a videotape in evidence must show that it is an accurate and faithful representation of what it purports to show.'" *Minner*, 256 S.W.3d at 97 (quoting *Phiropoulos v. Bi–State Dev. Agency*, 908 S.W.2d 712, 714 (Mo. App. E.D. 1995)). One way of laying that foundation is by "testimony of any witness who is familiar with the subject matter of the tape and competent to testify from personal observation." *Id.* (citing *State v. Powers*, 148 S.W.3d 830, 832 (Mo. App. E.D. 2004)). Sergeant J.D. flatly testified that he was present for his confrontation with Appellant and the video accurately depicted that confrontation. Having laid that proper foundation, the State was not required to adduce additional evidence of, for example, the exhibit's chain of custody. *See Interest of J.R.*, 633 S.W.3d 899, 904 (Mo. App. E.D. 2021).

Appellant also suggests on appeal that Exhibit 38 lacked foundation because it was irrelevant to the crimes charged. But foundation, as a matter of an exhibit's reliability, authentication, or identification, is distinct from the exhibit's relevance. *See Michaud Mitigation, Inc. v. Beckett*, 630 S.W.3d 795, 800 (Mo. App. E.D. 2021) ("[A]n allegation that evidence was admitted without a foundation can mean a number of things in context, such as that the evidence lacked authentication, identification, logical relevance, or legal relevance."). For that reason, "a general allegation of a lack of foundation is not sufficiently specific to draw a court's attention as to what aspect of the foundation is allegedly lacking." *Id.* Here, defense counsel objected to foundation and specifically the "reliability," not the relevance, of Exhibit 38 for lack of a chain of

custody. Accordingly, the relevance of Exhibit 38 is more appropriately taken up in Point II, where it is squarely raised.

Because the State laid a proper foundation for Exhibit 38, there is no evident, obvious, and clear error and we decline plain error review. Point I is denied.

<u>Point II</u>

Appellant argues in his second point that Exhibit 38 is neither logically nor legally relevant because it depicts a confrontation between Appellant and Sergeant J.D. occurring hours after the charged conduct and was prejudicial to Appellant.

*Preservation and Standard of Review*

While Appellant untimely objected to the foundation for Exhibit 38, he never objected to its relevance. We therefore may review only for plain error. Rule 30.20.

*Analysis*

"Evidence must be both logically and legally relevant in order to be admissible." *State v. Barriner*, 111 S.W.3d 396, 400 (Mo. banc 2003). "[G]enerally, evidence of uncharged crimes, wrongs, or acts is inadmissible to show an accused is predisposed to criminal conduct." *State v. Goodwin*, 43 S.W.3d 805, 815 (Mo. banc 2001). The exception to this rule is that "evidence of uncharged crimes that are part of the circumstances or the sequence of events surrounding the offense charged may be admissible to present a complete and coherent picture of the events that transpired." *State v. Miller*, 372 S.W.3d 455, 474 (Mo. banc 2012) (quoting *State v. Primm*, 347 S.W.3d 66, 70 (Mo. banc 2011)) (internal quotations omitted).

Appellant argues that, because Exhibit 38 depicts Appellant's confrontation with Sergeant J.D. several hours after the charged confrontation with Deputy T.G., it is neither logically nor legally relevant. *See State v. Davis*, 318 S.W.3d 618, 639 (Mo. banc 2010). The State responds

9

that, pursuant to *State v. Whitaker*, evidence of uncharged crimes is admissible to prove the circumstances surrounding, and a complete picture of, the charged conduct. 405 S.W.3d 554, 559 (Mo. App. E.D. 2013) (citing *Miller*, 372 S.W.3d at 474, for proposition that "[e]vidence of uncharged crimes that are part of the sequence of events or circumstances surrounding the charged offense may also be admissible to present a complete, coherent picture of the overall events").

Exhibit 38 depicts Appellant angrily yelling and threatening Sergeant J.D., "if you put a hand on me, I'll kill your whole family." Though the video depicts uncharged conduct, it was not admitted to show that Appellant was predisposed to criminal conduct. *See Goodwin*, 43 S.W.3d at 815. Rather, Appellant's conduct depicted on the video is relevant and not unduly prejudicial as part of the sequence of events surrounding the charged offenses. Exhibit 38 presents a complete, coherent picture of Appellant's conduct and state of mind while interacting with law enforcement, specifically Deputy T.G. and Sergeant J.D., over the course of just a few hours on October 6, 2020. *See Miller*, 372 S.W.3d at 474. The brief video shows Appellant's interaction with a law enforcement officer of the same department as the victim officer, who responded immediately after and as a direct result of the charged offenses, to the same location where Appellant had just committed the charged offenses. The nature of the charged offenses renders Appellant's conduct and *mens rea* during that short time frame particularly relevant given the State's burden to prove that Appellant acted in an angry or threatening manner and placed Deputy T.G. in apprehension of immediate physical injury.

Even if the admission of Exhibit 38 amounted to evident, obvious, and clear error, no manifest injustice or miscarriage of justice resulted. *See State v. Severe*, 307 S.W.3d 640, 642 (Mo. banc 2010). "'[P]lain error can serve as the basis for granting a new trial on direct appeal only if the error was outcome determinative[.]'" *State v. Baxter*, 204 S.W.3d 650, 652 (Mo. banc 2006)

10

(quoting *Deck v. State*, 68 S.W.3d 418, 427 (Mo. banc 2002)). Manifest injustice depends on the particular facts of each case, and the defendant bears the burden of establishing manifest injustice. *Id.* at 652.

In the particular facts of this case, Sergeant J.D. testified at length to the confrontation depicted in Exhibit 38, including Appellant's threat to kill his family, well before the admission of the video. Appellant did not object to this prior testimony, nor does he challenge it on appeal.

Also, other substantial evidence, including Appellant's own testimony, proved Appellant guilty of both unlawful use of a weapon and assault in the fourth degree beyond a reasonable doubt. In addition to the damning testimony of Deputy T.G. and the investigator, Appellant testified: he pulled a black handgun from the closet door, he put the handgun behind his back, he told Deputy T.G. that if he did "anything else stupid" he would get "popped," the purpose of doing so was to "warn" Deputy T.G., the handgun was readily capable of lethal use, and Appellant was aware of all of these facts at the time. Thus, Appellant essentially admitted that he knowingly exhibited, in the presence of one or more persons, a handgun, a weapon readily capable of lethal use, in an angry or threatening manner; and that he purposely placed Deputy T.G. in apprehension of immediate physical injury by exhibiting a handgun in an angry or threatening manner.

For these reasons, any error in the admission of Exhibit 38 did not result in manifest injustice and was not outcome determinative. *See Baxter*, 204 S.W.3d at 652.

Point II is denied.

Point III

In his third point, Appellant argues the trial court erred by overruling his burden-shifting objection to the State's argument that the jury could find Appellant not guilty only if it believed

his testimony and the testimony of his mother, and disbelieved the testimony of Deputy T.G. and the investigator.

*Preservation and Standard of Review*

When an objection during closing argument is preserved, this Court reviews the trial court's ruling for an abuse of discretion. *State v. Pittman*, 695 S.W.3d 306, 310 (Mo. App. E.D. 2024); *State v. Tramble*, 383 S.W.3d 34, 37 (Mo. App. E.D. 2012). "A ruling constitutes an abuse of discretion when it is 'clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration.'" *Cox v. Kansas City Chiefs Football Club, Inc.*, 473 S.W.3d 107, 114 (Mo. banc 2015) (quoting *Lozano v. BNSF Ry. Co.*, 421 S.W.3d 448, 451 (Mo. banc 2014)).

Appellant timely objected to "burden shifting," and the trial court overruled the objection. Appellant preserved the same objection in his motion for new trial, which the trial court denied.

*Analysis*

During closing argument, "'a prosecutor is allowed to argue the evidence and all reasonable inferences'" therefrom. *Pittman*, 695 S.W.3d at 310–11 (quoting *State v. Minor*, 648 S.W.3d 721, 732 (Mo. banc 2022)). This includes commentary on the credibility of witnesses and the defendant. *Id.* at 311.

Appellant nonetheless characterizes as impermissible burden-shifting the State's rebuttal argument:

> Ladies and gentlemen, everything [defense counsel] just told you, I would argue is absolutely true, if you believe the defendant and [his mother]. That all hinges on whether you believe them, and in order to believe – . . . It all is based on that. You have to believe -- because there's two stories here. There's the story that was told by [Deputy T.G.] and [the investigator] and Staff Sergeant [J.D.]. And there's the story that's told by the defendant and his mother.
> . . . .

> But you have to believe the defendant and his mother in order to find the defendant not guilty. And you have to disbelieve [Deputy T.G.] and [the investigator].

This Court's recent decision in *Pittman*, 695 S.W.3d at 310, is instructive. There, the State argued in rebuttal: "Now, in that instruction, he told you about who has the benefit. What does [Witness] gain? What does he get out of this? He doesn't know this man. Never seen this man. Why would he come in here and lie? So you've got two accounts. Either [Witness] is telling the truth or ... [D]efendant and ... [W]ife [are] telling the truth." *Id.* (alterations in original). We held the State's argument did not impermissibly shift the burden of proof to the defendant. *Id.* at 311.

Similarly, in *State v. Campbell*, 600 S.W.3d 780, 794 (Mo. App. W.D. 2020), the Western District of this Court made clear that "the State is entitled to argue relative witness credibility, and that by doing so, the State is not misstating the law or the evidence." There, the State contrasted the testimony of the defendant with the State's witnesses and argued, "To find [the defendant] not guilty, you would really have to believe that [Victim] made all of this up, and there is no credible evidence for that." *Id.* at 793. The Court concluded, based on a long line of similar cases, that the trial court did not err in overruling the defendant's objection to the State's closing argument. *Id.* at 794.[5]

At any rate, the State's rebuttal was directly responsive to defense counsel's inflammatory and improper argument that police officers lie "[b]ecause it's easy. Because they have experience

---

[5] *See, e.g., Glass v. State*, 227 S.W.3d 463, 473 (Mo. banc 2007) (prosecutor's closing argument that, to find defendant not guilty, jury "must believe that everyone who came in here lied to you" did not improperly shift burden of proof); *State v. Chism*, 252 S.W.3d 178, 189 (Mo. App. W.D. 2008) (not improper for prosecutor to argue that, to find defendant not guilty, jury would have to believe that State's witnesses lied); *State v. Vanlue*, 216 S.W.3d 729, 733–35 (Mo. App. S.D. 2007) (not improper for prosecutor to argue that, to believe defendant's testimony, jury would have to find that State's witness was lying); *State v. McClain*, 824 S.W.2d 103, 106 (Mo. App. E.D. 1992) (prosecutor's argument that, to acquit defendant, jury would have to believe all the State's witnesses were lying was not improper because "[a] prosecutor has the right to comment on the evidence and the credibility of witnesses from the State's standpoint during closing argument").

at it. They get good at it. And because [the State] is never going to prosecute them." The State is given considerable leeway to make retaliatory arguments in closing, even if the State's argument otherwise would have been improper. *State v. McClendon*, 477 S.W.3d 206, 218 (Mo. App. W.D. 2015) (citing *State v. McFadden*, 391 S.W.3d 408, 422 (Mo. banc 2013)). "'By attacking the credibility of the state's witnesses defense counsel invited a response from the state.'" *State v. Minner*, 311 S.W.3d 313, 327 (Mo. App. W.D. 2010) (quoting *State v. Castillo*, 853 S.W.2d 381, 386 (Mo. App. E.D. 1993)).

The trial court did not abuse its discretion in overruling Appellant's objection to the State's rebuttal argument.

Point III is denied.

Point IV

In his fourth and final point, Appellant argues the trial court plainly erred in failing to instruct the jury that it was free to "believe all, any part, or none of a witness's testimony" in Instruction No. 1, as required by MAI-CR 4th 402.01.

*Preservation and Standard of Review*

Rule 28.02(f) states that failing to give an instruction in violation of Rule 28.02 "shall constitute error, the error's prejudicial effect to be judicially determined . . . ." Rule 28.02(c) requires courts to give only the appropriate instructions "to the exclusion of any other instruction or verdict form." *State v. Bax*, 459 S.W.3d 493, 496 (Mo. App. W.D. 2015). In the case of jury instructions that have been revised, the appropriate jury instructions are those in effect at the time of trial. Rule 28.02; *McCroskey v. Marshall*, 519 S.W.2d 717, 721 (Mo. App. 1975).

Rules 28.02(f) and 28.03 require counsel to "make specific objections to instructions or verdict forms considered erroneous." Rule 28.03. Appellant did not object to Instruction No. 1

14

during the instruction conference. Thus, the issue is not preserved and may be reviewed only for plain error. Rule 30.20; *see also State v. Robinson*, 484 S.W.3d 862, 869 (Mo. App. E.D. 2016).

Instructional errors rarely rise to the level of plain error, which requires Appellant to show "'more than mere prejudice.'" *State v. DeRoy*, 623 S.W.3d 778, 789 (Mo. App. E.D. 2021) (quoting *State v. Darden*, 263 S.W.3d 760, 762 (Mo. App. W.D. 2008)). In conducting plain error analysis of instructional errors, we will reverse only "when the error is so prejudicial that it deprived the defendant of a fair trial." *Brandolese*, 601 S.W.3d at 531 (quoting *State v. Sanders*, 522 S.W.3d 212, 215 (Mo. banc 2017)) (internal quotations omitted). "'For instructional error to rise to the level of plain error, the trial court must have so misdirected or failed to instruct the jury that it is apparent to the appellate court that the instructional error affected the jury's verdict.'" *DeRoy*, 623 S.W.3d at 789 (quoting *Darden*, 263 S.W.3d at 762).

*Analysis*

Appellant asserts that the trial court plainly erred when it omitted from Instruction No. 1, the jury instruction on witness credibility, the sentence informing the jury that it "may believe all, any part, or none of a witness's testimony." The State omitted that sentence from its proposed instruction, and the trial court adopted the State's proposed instruction and submitted the instruction to the jury, all without objection from Appellant. The State appears to have proposed an outdated version of the model instruction, which did not previously instruct that the jury "may believe all, any part, or none of a witness's testimony." *See* MAI-CR 4th 402.01 (2017).

Had the trial court followed the then-current version of MAI-CR 4th 402.01, its Instruction No. 1 would have stated:

> In your determination of the facts, you alone must decide upon the believability of the witnesses and the weight and value of the evidence. *You may believe all, any part, or none of a witness's testimony.*

15

In determining the believability of a witness and the weight to be given to testimony of the witness, you may take into consideration the witness' manner while testifying; the ability and opportunity of the witness to observe and remember any matter about which testimony is given; any interest, bias, or prejudice the witness may have; the reasonableness of the witness' testimony considered in the light of all of the evidence in the case; and any other matter that has a tendency in reason to prove or disprove the truthfulness of the testimony of the witness. (emphasis added).

MAI-CR 4th 402.01 is mandatory. *See* Notes on Use, MAI-CR 4th 402.01. Because Instruction No. 1 was not the current version of MAI-CR 4th 402.01 at the time of trial, its submission to the jury was erroneous. *McCroskey*, 519 S.W.2d at 721 ("In almost all cases where an MAI instruction has undergone revision, instruction preparers should conclude that the old form may no longer properly be used. To hold otherwise would be to ignore the revision itself."). That error, however, did not result in a miscarriage of justice, and we have no reason to think it affected the jury's verdict.

Though Instruction No. 1 erroneously omitted the sentence instructing the jury that it "may believe all, any part, or none of a witness's testimony," the jury otherwise properly was instructed on witness credibility. The instruction correctly instructed the jury that it alone must decide witness credibility and the weight and value of the evidence, and provided a lengthy list of considerations for doing so. We note also that, despite the deficiency in Instruction No. 1, the jury instructions did not omit any element of the crimes charged. *See DeRoy*, 623 S.W.3d at 789 (quoting *Darden*, 263 S.W.3d at 762) ("'[A]n appellate court will be more inclined to reverse in cases where the erroneous instruction did not merely allow a wrong word or some other ambiguity to exist, but excused the State from its burden of proof on a contested element of the crime.'").

Finally, at no point did the State argue the jury must disbelieve all of Appellant's testimony. To the contrary, much of Appellant's testimony supported the State's case, notwithstanding the State's rebuttal argument that the jury had to believe the testimony of Appellant and his mother to

16

find Appellant not guilty. In fact, in its initial argument, the State encouraged the jury to credit at least some of Appellant's testimony. For example, when arguing Appellant's guilt of unlawful use of a weapon, the State argued: "[Defendant] told you that weapon was readily capable of lethal use. That's another thing we have to prove in this case. The defendant said it; the officer said it; and [Deputy T.G.] said it." The State likewise referred to Appellant's testimony as proof of Appellant's exhibiting a handgun, an element of both crimes as charged:

> In this area is where the defendant reached for – and you heard testimony from the defendant himself that said that's where he got that black in color handgun. . . . He reached in there and removed that handgun and put it in the back of his waist area with his right hand. . . . And he had his hand on it so it wouldn't fall out of there. That was his story.

We perceive no plain error resulting in manifest injustice and affecting the outcome of the trial. This is not to say we are untroubled by the State's failure to submit the proper version of the mandatory instruction. Ultimately, jury instructions are the trial court's instructions, and any error arising from an improperly instructed jury is the trial court's error. *See Robinson*, 484 S.W.3d at 872–73. But trial courts often rely on the expertise and integrity of prosecutors, who occupy a unique position in our criminal justice system. *See State v. Banks*, 215 S.W.3d 118, 119–21 (Mo. banc 2007). "A prosecutor has the responsibility of a minister of justice and not simply that of an advocate. This responsibility carries with it specific obligations to see that the defendant is accorded procedural justice and that guilt is decided on the basis of sufficient evidence." *Id.* at 119–20 (quoting Rule 4-3.8 cmt.).

Point IV is denied.

## Conclusion

For the foregoing reasons, we affirm the judgment of the trial court.

Cristian M. Stevens, J.,

Angela T. Quigless, J., concurs.
James M. Dowd, P.J., concurs in a separate opinion.



# In the Missouri Court of Appeals
# Eastern District

**DIVISION ONE**

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED112420 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of Ste. Genevieve County |
| v. | ) | Cause No. 20SG-CR00645-01 |
| | ) | |
| LEONARD H. BURST, | ) | Honorable Jerel L. Poor II |
| | ) | |
| Appellant. | ) | Filed: April 15, 2025 |

Before James M. Dowd, P.J., Angela T. Quigless, J., and Cristian M. Stevens, J.

**CONCURRING OPINION**

I concur in the principal opinion's rationale and result with respect to points I, III, and IV. I also concur with respect to the result in point II because I agree that no manifest injustice or miscarriage of justice occurred here. But I diverge slightly from the principal opinion with respect to the first component of plain error review – whether the admission of the brief video (Exhibit 38) of Burst's interaction with Sergeant J.D. several hours after Burst's criminal interaction with the victim here was evident, obvious, and clear error. I believe that it was because the video was not logically or legally relevant to the charged crimes. How Burst behaved several hours after the crimes and what he said to a non-victim at the end of a several-hours' police standoff was irrelevant to the critical question here whether he purposely placed Deputy T.G. in apprehension of immediate physical injury by exhibiting a handgun in an angry

or threatening manner inside the Burst home.  Moreover, on the legal relevance question, the prejudice of allowing the jury to hear Burst's vile threat to Sergeant J.D. and his family readily outweighs the probative value of this evidence which I believe to be probative of nothing. Finally, I am likewise unpersuaded that this video is part of the "complete and coherent picture of the events" so as to somehow come under the exception to the rule that uncharged-crimes evidence is generally inadmissible.

_____
James M. Dowd, Presiding Judge